Kidder, J.
This action was brought upon a letter of guarantee, *241 which was as follows:
“ Sioux Falls, Dl T., March 9, 1878.
•“ MoU/ne Plow <?<?., Moline, Illinois:
“ Sirs:- — We, the undersigned, are acquainted with Peter Gil- ■“ man of this place, (formerly of Eondulac, Wisconsin,) and have no hesitation in endorsing him as an honest, capable business •“ man, and deserving of confidence and credit. We think your -“ informant in regard to Mr.. Gilman’s business ability and capacity •“ was in error, if not selfish and malicious. We will satisfy all ■“ orders Mr. Gilman .gives this spring — such as plows and culti- •“ vators. Wm. B. Dick,
“ H. Gilbert,
•“ .Jacob Sciletzel, Jr.”
Mr. Dick, having deceased, was not made a party. Peter Gil-man took this guarantee and enclosed it to the plaintiff in his letter, which reads:
“ Sioux Falls, D. T., March 9, 1878.
■“ Moline Plow Oon Moline, Illinois:
“Will you accept my order under'the recommend enclosed? “ If so, ship me the breakers as ordered; also the cultivators and “ about six vibrating harrows, (XXX.) I am sorry about such a “ report, as stated to you, but still 1 will try and satisfy you, and “ I know you will think so much the more of me.
“ I remain yours,
“ Peter Gilman.
“ If you accept my order please ship the goods at once, and “ oblige. P. G.”
Thereafter during the spring of 1878, Gilman gave to the plaintiff four other orders for plows and cultivators which the plaintiff filled by selling and delivering the same to him at Moline, Illinois, to the amount of $1,051.05, upon which there was paid $50.53, The balance is what was sought to recover. Previous to all of *242 which Gilman sent an order to the plaintiff, which is as follows:
“ Sioux Falls, D. T., January 21, 1878.
“ Moline Plow Go., Moline, Illinois:
“ I hereby order of you the plows and other goods in your price “ list hereto annexed, to be delivered on board of cars at Moline, “ Illinois, marked ‘ Peter Gilman,’ at prices and terms of warranty “ annexed, for which I agree to pay you one-half September 15, “ 1878, and January 1, 1879, with interest at ten per cent, from “ maturity, payable at Sioux Falls Bank, Sioux Falls, D. T., ex- “ change or express charges prepaid. Account to be settled “ monthly by note, payable as above. XXX.
“ All other goods ordered during the season will be on the same terms, and are to be paid for in the same manner. XXX.
“ Discount from this list 30 per cent. Ship on or about March “ 1, 1878, via cheapest route. Peter Gilman,
“ ■ M. P. Co. per P. E. Fowler.”

{Here follows Schedule of Prices.)

This order after looking up the commercial standing of Mr. Gilman the plaintiff declined to fill unless Gilman could furnish good security, and this was communicated to Mr. Gilman before March 9. And there was testimony introduced on the trial below, as the record shows, which tended to prove that said order was “ canceled ” and “ laid away as dead paper,” when the guaranty was received; and there was also testimony which tended to show that it was in esse at that time, and that said goods were sold and delivered upon it.
On the 28th of July, 1878, the agent of the plaintiff — without the knowledge or consent of the defendants, or either of them — - settled the balance of said account, by taking two notes payable to the plaintiff, one for the sum of $550.53, with exchange on New Yoi’k, or express charges, and interest from date at .the rate of ten *243 per cent, annually until paid, payable the 15th day of September, and executed by Peter Gilman and Win. B. Diclc. The other payable the loth of November, 1878, for the sum of $450. (Otherwise the same as above.) Also there was a settlement of same date, signed by Gilman and Fowler, the agent of the plaintiff, as follows:
“ Settlement with Peter Gilman, Sioux Falls, Dakota, date July « 28, 1878:
“ Account M. P. Oo.“. Invoice May 20, 1878.
$1051.05
“ Bills Rec. date July 28, 1878: Or.
“ Due Sept. 15, 1878.....................$ 550.58
“ Due Not. 15,1878..................... 450.00
“ Cash to balance........................ 50.52
“ Retained..............$50.52.
“ Peter Gilman,
“ Moline Plow Co. per P. E. Fowler.”
There seems to have been no objection to the complaint, which counted on the letter of guaranty, and the sale and delivery of the goods to Gilman. The defendants in their answer admit only the writing and sending of the letter, and deny each and every other allegation of the complaint. The answer also sets up that by the agreement under which the goods were purchased, certain terms of credit and payment were agreed upon, and that subsequently, without their knowledge, these terms were, by the principal parties, materially altered, whereby they were exonerated.
Th & first assignment of error was the admitting in evidence upon the trial the letter-press copy of the plaintiff’s letter of March 14, 1878, which is as follows:
“ 'Peter Gilman, Esq.,
“ Sioux Falls, D. T.
“ Tours of the 9 th is at hand and satisfactory. We will ship “ your goods iu a day or so and hope they will arrive promptly. “ Lobdell.”
*244 It appears that no- foundation was- laid for its introduction, and it was obj ected to- upon that ground. The obj ection was well taken, if the investigation, stops here-, but this letter was written in reply to Gilman’s letter of' March 9, in which he encloses the defendant’s letter of guaranty of the same date-,, and inquires,. “ Will you accept “ my order under the recommend enclosed? If so, ship- me the “ breakers as ordered, and also the cultivators,” &c. This letter of Gilman’s did not require a reply; the contract between the parties was consummated upon the shipping of the goods. He did not say, £t If you accept my order,.write me.” It was entirely immaterial whether the plaintiff replied to the letter or not. The-goods were shipped in response to-the letter, and the plaintiff would have been- entitled to recover just the same as. if no reply had been sent him-. Wc are unable to comprehend in what respect the admission of the copy could affect the recovery, or be an inj ury to the defendants.
In the celebrated divorce case, Forrest v. Forrest, 25 N.Y., 501, the learned Judge-who delivered the opinion-of the court, said:: “ It was insisted that the same principles upon which a court of “ law formerly proceeded in granting or ref using a new trial should “ be applied to the case; and if evidence had been rejected on the “ trial of the issues that ought to have been received, or evidence “■ received that should have been rejected, the defendant was en-u titled to a new trial. This-is hardly the rule now in a court of “■ law- — for, latterly, even these courts undertake to- judge for “ themselves of the materiality of the evidence found to have been ££ impro-pei’ly admitted or rejected; and when satisfied that no “ injustice has been done, and that the verdict would have been “ the same with or without such evidence, they have refused a ££ new trial.” He cited Doe v. Tyler, 6 Bing., 561, and other cases, and went on to say: u Courts of equity have, however, ££ been governed by very different principles from those of a court *245 “ of law, in granting or refusing new trials of issues of fact. “ Though evidence has been improperly admitted or rejected, if a “ court of equity was satisfied that the verdict ought not to have “ been different, it would not grant a new trial merely on such “ ground.” He cited Barker v. Ray, 2 Russ., 63, and other cases.
A rule is laid down in 3 Waits’ Practice, 420, sustained by numerous authorities, which we consider as settled, viz: “That “ whether the error complained of was the admission of improper „ “ testimony, or the rejection of that which was proper, another “ trial will not be ordered, unless the court, taking the whole of “ the evidence together and connecting it with the Judge’s charge, “ thinks that injustice has been done by the error committed.” This is extending the rule further than we are asked to do in the case at bar.
2. Was there error in the ruling out of a portion of the deposition of Ohas. W. Lobdell? The deposition was taken by the plaintiff to be, and was, used by him on a former trial of this case. And Lobdell was in court and was a witness, and had testified on the part of the plaintiff in the trial of the case. The defendants offered interrogatory 11, of said deposition, and the witness’ answer thereto, which were as follows:
“ Interrogatory 11. — Was there any agreement between the “ plaintiff and Oilman, or between the plaintiff and defendants “ that the time mentioned for payment in the order of January “ 21, 1878, should govern for any and all sales made during the “ spring of 1878, under the defendant’s letter of guaranty? If so, “ state regarding- it.
“ Answer. — As I understood it the terms for the season were “ stated in the original order, 1 Exhibit A,’ and the guaranty was “ for the same time.”
Objected to because the answer was not responsive to the question.
*246 If this question -had been put to a witness upon the stand, and he had answered it in the same manner, it would have at once been stricken out by the court on motion. It is a well settled doctrine that a witness cannot testify as to his understanding of a matter; and it is clear that the answer is not responsive to the question. Although under this objection the court ruled correctly, yet the proper objection would have been, that the witness is here in court, and therefore the deposition is not admissible; then it could not have been used only to impeach the witness after the proper foundation had been laid.
“ The deposition of any witness may be used only m the follow- “ ing cases:
“ 1. When the witness does not reside in the county where the “ action or proceeding is pending,” * * * “ or is absent “therefrom:” Code of Civil Proc., Secs. 469,479. “When a “ deposition is offered to be read in evidence, it must ajipear to “ the satisfaction of the court that for some cause, specified in “ section 469 of this Code, the attendance of the witness cannot “ be procured:” Sec. 482.
3. Eefusing to submit to the jury special issues as requested, is alleged as error. At the proper time the defendants presented three special issues in writing, as follows:
“ 1. Did the defendants at the time of giving the letter of “ guaranty understand that the orders of Gilman, therein referred “ to, were to be given and filled on credit; and if so, upon what “ terms of credit?”
“ 2. Were the goods ordered by Gilman and sent by the “ plaintiff upon the terms of credit specified in the order or cou- “ tract of January 21, 1878?”
“ 3. Wore the terms of credit agreed upon between the plain - “ tiff and Gilman (if any) changed upon the settlement of July 28, “ 1878, without the consent of the defendants?”
*247 And the defendants asked the court to submit said issues to the jury and instruct them that, in their discretion, they might render a special verdict upon said issues, or either of them, which the court refused to do.
We could properly avoid deciding the question that is here submitted, on the ground of irregularities in the presenting the questions to the court below. The questions — as shown by the abstract brought up — it is true, were in writing; but there was no instruction “ reduced to writing,” (Code, Sec. 248,) asking the court to so submit the issues as required by the Code, that the Judge might “ write on the margin thereof the word£ refused? or£ given? ” to indicate whether he approves the same. Hence we might say, the issues are not before us.
Again, there does not seem to have been a scintilla of evidence submitted to the jury upon the first issue. And it is evident — ■ on examining the pleadings — that the secondnov the third covered all the issues involved. But as this court has never passed upon the question sought to be submitted, we will waive all technicalities and meet the point squarely.
The Code, section 261, is as follows: “In an action for the re- “ covery of money only, or specific real property, the jury, in their “ discretion, may render a general or special verdict. In all other “ cases the court may direct the jury to find a special verdict in “ writing upon all or any of the issues, and in all cases may in- “ struct them, if they render a general verdict, to find upon par- “ ticnlax questions of fact, to be stated in writing, and may direct “ a written finding thereon.”
We have reviewed all the authorities that the learned counsel for the defendants relied upon at the bar, and, after careful consideration, we find that but one of the cases can be considered as authority upon the question under discussion, and that sustains the position claimed by the plaintiff. Jones v. The Insurance *248 Co., 61 N. Y., 79, was an action brought upon a policy of life insurance, issued by the defendant to the plaintiff, upon the life of oneNewning.
When the testimony was closed the court submitted three questions to the jury, stating it would determine the case, except upon those issues. To this submission, in this form, the defendant excepted. There were also other questions not material here. •Judgment was for the plaintiff.
The défendant claimed that there was a mistrial, or such an irregularity that the judgment should be reversed.
The court in delivering the opinion says: “ The irregularity ■ “ complained of consists in the fact that the Judge submitted three “ questions to the jury without their going through the form of • “ finding a verdict, either general or special, and on receiving ■ “ affirmative answers to two of these questions, which made any “ finding on the third unnecessary, proceeded to order the entry ■ “ of j udgment. The proceeding was plainly informal, and it is ■ “ insisted that the irregularity was of such a kind as to amount to -“ a mistrial.” The objection was as to the form of the verdict, • and the court cited the 176 section of the New York Code, the - same substantially as ours, “ that the court shall in every stage of ' “ an action disregard any error or defect in the pleadings which shall not affect the substantial rights of the adverse party, and -“ no judgment shall be reversed or affected by reason of any such “■error or defect.”
The Iowa case, Schultz v. Cremer, (No. 2,) 13 N. W. Rep., 59, was an action for damages for the alleged wrongful conversion of property. The defendant pleaded the general denial. A trial by jury and a special but not a general verdict. The court rendered judgment for the plaintiff. The defendant appeals.
The court say: We infer from the record, “that the court ■“-directed the jury, against the objection of the defendant, to re- *249 “ turn only a special verdict. A jury may, in tbeir discretion, “ render a general or special verdict: Code, Sec: 2808. They “ may, also, when they render a general verdict, be required' to “ render a special verdict in addition: See section above cited. “ The language is: ‘In any case in which they (the jury) render “ a general verdict, they may be required by the court * * * “ to find specially upon any particular question of fact to be stated “ to them in writing.’ The statute does not authorize the court “ to require a special verdict except in addition to a general ver- “ diet. The rendition of a special verdict without a general ver- “ diet is left solely to the discretion of the jury. * * *• But “ it appears to us that every party has a right to a general verdict “ if he demands it and the j ury sees fit to render it. * * * “ We think the court erred in directing the jury, against the de- “ fendant’s objections, to render a special verdict only.” Th'e judgment was reversed.
The only point in this case was, that the court directed the jiiry against defendant’s objections to find a special verdict only.
Peck v. Snyder, 13 Mich., 21, was an action brought to recover damages for not building a house and barn according to the contract, and was tried by a jury.
The court in delivering the opinion saysr “I can see but one “ exception taken below, to which our attention can be directed, “ and that is, to the refusal of the Judge to direct the jury to find “ specially, upon certain questions, in case they found a general “ verdict. This is a novel request. A jury may find a general or “ special verdict, according to the exigencies of the case; but a “ Judge cannot direct or compel them to do either, and more par- “ ticularly, not to give reasons for a general finding.”
This, seemingly, is the authority in point. The jury cannot be required to give a special verdict, although they may give one: 1 Burrill’s Practice. 242; Tidd’s Practice, 897.
*250 It is conceded by the counsel that “ in all other oases the court may direct the jury.” “This,” he says, “undoubtedly makes it “ discretionary with the court in all such {other oases ,’ but ex- “ eludes thp idea of any discretion on the part of the court for the “ recovery of money only, or specific real property. In these two “ classes of cases the discretion is solely with the jwry. And we “ submit that the Court erred in denying or interfering with the “ jury.” The specific objection to the ruling of the Court is that he did not interfere with their discretion. He was asked’ to submit the issues to the jury and instruct them that in their discretion they might render a special verdict, which was denied. This was not interfering with their discretion. They were left with the law as it is, without any suggestion or intimation from the Court, to render in their discretion “ a general or special verdict.”
“ And in all cases [the Court] may instruct them, if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon.” This clause of the section (261) covers the first clause for the recovery' of “ money only,” etc. The Court, then, in all oases may instruct them, if they render a general verdict, to find specially. And we agree with the defendants’ counsel that it is “ discretionary with the Court in all such other cases.” This being so, it is plain to us, that the words, “ and in all oases” include all the cases mentioned in said section; and, therefore, the discretion is in the Court whether he will so charge, or not. It should be so. He sees the points in a case as the trial progresses, and is expected to exércise a reasonable judicial judgment as to how he will present the law to the jury in endeavoring to aid them in the application of the facts thereto. When the testimony is closed he is expected to comprehend the case, and from his disinterested stand-point, to administer the law in such a manner as will tend to meet out such substantial justice to the parties as they shall, respectively, seem *251 to merit from the facts therein and the law .pplicable thereto.
It is his duty to charge the jury, whether requested or not, upon every point material to the decision of the case, upon which there is evidence, and to charge correctly and fully.
In regard to written requests, the Court is not bound to regard them in his charge, unless they are couched in such language as to be sound to the full extent. The fact that some sound law might be extracted therefrom, is not enough. They must be wholly sound law, and without any necessary qualification. Although a party may not be entitled to the particular charge to the jury which he requests, yet it is the duty of the Court to charge as the facts in the case require. The Court is not required, in a charge to the jury, to answrer every request of the parties in the words made use of in the requests; he must instruct the jury correctly as to the law, but may adopt his own language. And, where in the charge, on his own motion, he covers the charge requested, he is at liberty to refuse the charge. A substantive proposition of law may be refused unless connected with the case.
As in the case at bar, on looking into the charge of the Court, it is discovered that the charge more than covered the issues that were refused; therefore, the Court could have refused them for that reason.
The Code says: “The jury, in their discretion, may render a general or special verdict.” Counsel inquire, “ how can they know such is the law unless the Court declares it?” It is too late in this age of intelligence and progression to make such an inquiry. Men of this generation who are capable of adapting the elements and things in the natural world to such practical use and benefit as may every where be seen, and have made such rapid strides in improvements in all the departments of life — men who are qualified to instruct in the arts and sciences are capable of contemplating general results without the aid or dictation of the Court.
*252 Blackstone,.a long time ago, said: “The trial by jury is the Palladium of our civil rights.”
Our Legislative Assembly, no doubt, so thought when it passed the law. Be that as it may, we take up the law as we find it, and our duty only is, to construe it.
á. Counsel waives the exceptions to the charge, except as to the plaintiff’s request number two, embraced therein. And in order to have a proper understanding of this part of the charge we should read the whole paragraph together, which is as follows: “ If you believe from the evidence that the plows and cultivators “ were sold and delivered to Gilman on the orders of Gilman, •“ dated the 9th of March, 1878, and thereafter, in connection with “ the letter of the defendants to the plaintiff, then the plaintiff ■“ was authorized by this letter of the 9th of March to hold defen- “ dants liable for all the orders of Gilman given in the spring of “ 1878.” [Here follows the part excepted to.] “ And at the “ expiration of that time plaintiff was at liberty to accept the “ notes of Gilman & Dick for the goods ordered by him during “ said spring, and to follow out its usual course of dealing in such “ cases, and the defendants are not discharged from their obliga- •“ tions imposed by said letter because of such settlement and the “ taking of such notes.”
In this connection, the Court further instructed the jury, not excepted to, if “ you find from the evidence that the order of Gil- “ man on the plaintiff, dated the 21st day of January, 1878, was “ the agreement between the plaintiff and Gilman upon which the “ plows and cultivators were sold and delivered to Gilman; and if “ you further find from the evidence that by the terms of the “ agreement of purchase, said Gilman was to pay for the goods “ bought by him — one-half on September 15th, 1878, and the “ balance on January 1st, 1879, with interest at ten per cent, per “ annum from maturity, and that the accounts for such goods were *253 •“ to be settled by him monthly by note, payable as above men- •“ tioned as specified in the order of January 21st, 1878; and that •“ afterwards on or about the 28th of July, 1878, upon an account- •“ ing and settlement between the plaintiff and said Gilman, said •“ agreement was by the plaintiff, without the consent of the de- •“ fendants, altered in any respect, iu the time of payment, or in •“ the proportionate part payable in the first payment, or in the •“ matter of interest, then such alteration would exonerate these ■“ defendants, and the plaintiff cannot recover in this aetiom,” etc.
He further charged that the jury should consider whether the ¡settlement and taking of the notes impaired or suspended the plaintiff’s remedy in any respect against Gilman; and if it did, the defendants were exonerated.
And, also, if they found there was any suspension of the plaintiff’s remedy without the consent of the defendants, they should find for the defendants.
Oh examining the record and the whole charge, we can see that the prominent issue in the case was whether the goods were sold and delivered on the -order of Gilman, dated on the 21st of January, 1878, or on his orders -of the date of March 9th, and after-wards. It appears to ns that the Court in his charge placed this issue fairly and squarely before tbe jury, and they found for the plaintiff; that is, that the contracts for the sale of the goods were the orders of Gilman of the dates of March 9th, and thereafter. Taking the whole eharge together — and it should be so construed, —we think it is a very fair, correct and clear exposition of tbe law applicable to the case.
The jury having found for the plaintiff, thereby ignoring the claim of the defendants that the contract between the plaintiff and Gilman was tbe one of the 21st of January, 1878, the question as to the discharge of the defendants from the liability incurred by their letter of guaranty, who defend as guarantors, upon the ground *254 of an alteration of tbe contract by the principal parties, without their knowledge or consent, does not now arise. But quaere— whether shortening the time of payment impairs or suspends the remedies or rights of the creditor against the principal in respect thereto: Civil Code, Sec. 1665.
5. Is the evidence sufficient to sustain the verdict? On reading the testimony in this case and applying it t© the issues made by the parties in the pleadings, we can come to no other conclusion than that there is therein a substantial conflict; and this being so, the question can hardly be considered an open one here. This court on two occasions has decided this question: French et al. v. Lancaster et al., 9 N. W. Rep., 716; Caulfield et al. v. Bogle, 11 id, 511, and cases therein cited. In the latter case the learned Judge who delivered the opinion, says: “There was evidence “ presented to the court below on the trial by both parties bearing “ upon these questions, and this evidence was more or less conflict- “ ing. That court had the opportunity to see the witnesses, to note “ their appearance and conduct, and could judge of the prepon- “ derance of evidence far better than an appellate court, not having “ had such opportunity, possibly can. After weighing the evidence “ in the light of all these circumstances, that court made its decision “ whieh was equivalent to a finding of fact. In such cases courts “ have always hesitated to disturb the verdict of a jury, or the find- “ ings of a court, upon a question of fact, the evidence being con- “ flicting, and will not, unless great injustice appears to have been “ done, or there is an entire want of evidence to sustain it.”
Such has been the current of decisions in this country, unless in some of the States where this subject is controlled by statute. In Humphrey v. Havens, 12 Minn., the court says: “ It has been “ repeatedly held in this court and elsewhere, that, as a general “ rule, the findings of a jury, a court, or referee, upon a question *255 “ of fact, will not be diLturbed when there is any evidence reasonably tending to sustain it.”
The federal courts sustain the same doctrine: 8 Wal., 337; 9 Wal., 38.
There seems to be no conflict of authority upon this point, and they must be decisive upon this question. No error appearing in the record, the judgment of the court below is,
Affirm kd.
All the Justices concurring.