## THOMAS ASHE *vs.* GEORGE M. BEASLEY & CO.

Opinion filed November 19th, 1896.

### Certificate of Protest Prima Facie Evidence.

Under the statutes of this state the certificate of protest of a notary public is *prima facie* evidence of the facts of presentment, demand, and dishonor therein set forth, as well in the case of an inland bill or note as in the case of a foreign bill.

### Notice to Take Depositions—Sufficiency.

A notice to take depositions should state the name of each witness to be examined.

### Abstract Must Contain Sufficient to Sustain Contention.

The appellant must embody in his abstract the necessary facts to sustain his contentions. The court will not explore the record for the purpose of finding something to induce it to arrive at a different conclusion from that reached by the trial court.

### Presentment for Payment.

When a note is payable at a bank, a statement in the certificate of protest that it was presented at the place of payment, and payment demanded, is sufficient evidence of a legal demand, without a further statement to whom it was presented for payment.

### Notice of Dishonor—Who Entitled To.

In determining whether due notice of the dishonor has been given to indorsers, each agent and subagent for collection is to be regarded the same as a purchaser of the paper.

### Agent or Subagent May Give Notice of Dishonor.

Any agent or subagent holding the paper for collection may give notice of dishonor with like effect as an owner of the paper.

### Notice of Dishonor—Whose Benefit.

Notice given by a proper party inures to the benefit of every party to the paper whose right to give a similar notice had not at that time been lost.

### Variance Between Allegation and Proof.

When there is a variance between the allegations of the complaint and the evidence, but no objection is made to the evidence on that account, the appellate court will treat the pleading as amended to conform to the proof.

Appeal from District Court, Stutsman County; *Rose,* J.

Action by Thomas Ashe against W. W. Beasley, Nat. C. Beas-

ley, and George M. Beasley, partners as George M. Beasley & Co. From a judgment for plaintiff, defendants appeal.

Affirmed.

*James G. Campbell*, for appellant.

*E. W. Camp*, for respondent.

CORLISS, J. Judgment has been rendered in favor of the plaintiff, as holder of a negotiable note, against the defendants, as indorsers thereof. The defendants appeal from that judgment, and the whole case is before us for a trial *de novo*, the action having been tried before the court. One of the grounds of the defense was the alleged failure to present the note at maturity, and demand payment, and give timely notice of its dishonor to the defendants. In order to charge the defendants as indorsers, it was, of course, necessary that due presentation and demand should be made, and that proper notice of dishonor should be given to the defendants. The only evidence that payment had been demanded and refused was a notarial certificate of protest. Defendants objected to the introduction of this certificate in evidence, on the ground that the note sued upon was a domestic or inland note, being made and payable in this state. It is here urged that this court should not regard this certificate as any evidence of the facts of presentment, demand, and nonpayment therein set forth; and, if this contention be sound, the plaintiff must fail in making out a case against the defendants. Unless the statutes of this state have wrought within this jurisdiction a change in the common law, defendants' counsel is correct in his position. At common law the notary's certificate of protest of a foreign bill was received in evidence of the facts therein set forth, so far as they were facts relating to his official duty with respect to the paper he had protested. This doctrine rested upon the ground of commercial convenience. The courts, from the beginning, have always recognized the fact that such a rule is a departure from the settled principle of the law of evidence that the best evidence must be produced; and they have, therefore,

been careful to restrict its operation to foreign bills of exchange. 2 Daniel, Neg. Inst. § § 926, 927; 16 Am. and Eng. Enc. Law, 776; 3 Rand. Com. Paper, § 1171; *Corbin* v. *Bank,* (Va.) 13 S. E. Rep. 98; Story Prom. Notes, § 297; *Nicholls* v. *Webb,* 8 Wheat. 326; *Young* v. *Bryan,* 6 Wheat. 146. While there is some authority for the proposition that foreign promissory notes are within the rule (*Williams* v. *Putman,* 14 N. H. 540,) yet the disposition of the courts has been to limit this exception to the general rule of evidence to a single class of negotiable instruments; *i. e.* foreign bills of exchange. Indeed, there is authority for the doctrine that the notary's certificate is not evidence in any case where he resides in the same country in which the action is tried. 1 Pars. Notes & B. 635; *Nicholls* v. *Webb,* 8 Wheat. 326. But this doctrine has not obtained very wide acceptance. If this paper sued on were a foreign bill of exchange, instead of a promissory note, we would hold that the certificate of protest would be competent evidence, notwithstanding the fact of the residence of the notary public in this state.

On the other hand, we are unable to agree with counsel for plaintiff that the fact that the defendants are nonresidents (if such is, indeed, the fact) is sufficient to make the certificate of protest evidence as against them when they are sued in a state in which the notary public who made such certificate resides. They are at most merely nonresident indorsers of a domestic promissory note. That at common-law the certificate would not constitute evidence against them for any purpose is too plain for argument. See cases first above cited. Have our statutes changed this common-law rule? In construing them we must bear in mind the fact that the almost uniform trend of legislation in this country is along the line of the enlargement of the use of a notary's certificate as *prima facie* evidence. See these statutes as referred to in 3 Rand. Com. Paper, § § 1149-1161. In most of the states the notary's certificate of protest is by statute made evidence whatever the character of the negotiable paper is,

whether it is a foreign bill or inland bill or note. In many of the states there is cast upon the notary a new duty, which at common law did not rest upon him. At common law, when he had presented the paper, demanded payment, and protested it for nonpayment, his duties with respect to that paper were ended. He was under no obligation to give notice of dishonor, and if he did give such notice, his certificate of that fact was not evidence thereof, for the reason that such an act was not an official act. To prove the giving of notice by the notary, he must in the absence of a statute, be called the same as any other witness. 3 Rand. Com. Paper, § 1181. But under modern legislation the duty of notifying the indorsers of the dishonor of the paper, is as a general rule, imposed upon the notary, and his certificate of that fact is made evidence thereof. These statutory provisions are made applicable to all kinds of negotiable paper. The great mass of legislation, all directed to one end, is significant of the fact that it is the settled convictions of the commercial world that the use of a notary's certificate as *prima facie* evidence is a great business convenience, and that giving it the force of *prima facie* evidence will not tend to pervert truth or defeat justice. It is in the light of this condition of public sentiment that we must interpret our somewhat ambiguous statutes on this subject. They are § § 499-501, Comp. Laws, and are couched in the following language:

Section 499: "It shall be the duty of every notary public personally to serve notice upon the person or persons protested against, or by properly folding the notice, directing it to the party to be charged, at his place of residence, according to the best information that the person giving the notice can obtain, depositing it in the United States mail or post-office most conveniently accessible from the place where the protest was made, and prepaying the postage thereon."

Section 500: "The officer making such protest shall receive the sum of twenty-five cents and postage for each and every notice so made out and served."

Section 501: "Each and every notary public shall keep a record of all such notices, and of the time and manner in which the same shall have been served, and of the names of all the parties to whom the same were directed, and the description and amount of the instrument protested; which record, or copy thereof, certified by the notary under seal, shall at all times be competent evidence to prove such notice in any trial before any court in this territory where proof of such notice may become requisite."

It is obvious that one purpose of these sections was to cast a new duty upon the notary,—*i. e.* the duty of giving notice; and the record he makes of the giving of such notice or a certified copy thereof is made evidence of the fact that the notice was so given. But it is nowhere declared in these sections that the notary may protest an inland bill or note, or that his certificate of protest of such paper is evidence of any of the facts set forth in such certificate. The statute seems to recognize an existing custom to protest all kinds of negotiable paper, but it does not, in terms, provide that the notary's certificate will be evidence in any case, apparently leaving the matter to common law regulation. And yet the statute plainly makes it the duty of a notary who protests an inland bill or note to give notice, and declares that his record of the giving of such notice shall be evidence thereof. It is singular that the legislature should have taken pains to make the notary's record of the giving of notice evidence, and at the same time leave his certificate of the protest of the very same paper subject to the common law rule that it is not evidence of presentment, demand, or dishonor. Were there no other statutory provisions on the subject, the question of construction would be a very difficult one. But § 507 of the Comp. Laws declares that full faith and credit shall be given to all the protestations of all notaries public. It is to be noticed that the phrase "full faith and credit," contained in § 507, is the very phrase employed by Mr. Parsons in his work on Notes and Bills. He says: "In the case of foreign bills protested in a country other than that in which the suit is brought, full faith and credit are

given to the instrument of protest, and the original or duly certified copy are admissible in evidence of the acts therein stated as far as those acts are within the scope of the notary's official duty." Pars. Notes & B. p. 635. It is thus made apparent that the legislature, in framing § 507, employed the very language which had been used to express the doctrine that a notarial certificate was evidence of certain facts therein stated. It is, therefore, our opinion that a notary's certificate of protest is, under our statutes, *prima facie* evidence of the facts of presentment, demand, and dishonor, if such facts are set forth in the certificate. It follows that there is sufficient evidence of these facts in this case to support the finding of the trial court in this respect, and to justify, and indeed compel, us to find the same facts on the trial here of this case *de novo*. It is next urged that the statement in the certificate is not sufficient to show a legal demand the statement is that the notary "presented the note at the place where the same is payable, and demanded payment thereof, which was refused." The note was payable at a specified bank, and the statement that it was presented at the place at which it was payable carries with it the assertion that it was presented at the bank at which it was payable. The statement that payment was there demanded and refused is clearly a statement that the demand was made of some one connected with the bank. The contention of counsel that it is entirely consistent with the language to assume that the notary went to the front door of the bank, and made a demand of a passer-by, is too hypercritical to merit serious consideration. When a note is payable at a bank, it is sufficient for the notary to state in his certificate that he presented the paper at the place of payment, and made a demand, without specifying the person upon whom the demand was made. *Douglas* v. *Bank*, (Tenn.) 36 S. W. Rep. 874-877; 2 Daniel, Neg. Inst. § 955; *Hildeburn* v. *Turner*, 5 How. 69.

It is next claimed that there is no evidence in the case that the defendants were notified in due time of the dishonor of the paper, or were notified at all. The notarial certificate already

referred to is silent on the question of notice to the defendants. It appears from the face of such certificate that the notary who protested the paper did not in fact serve any notice upon the defendants. The only evidence on that point is contained in the deposition of E. H. Talcott. It is urged that his evidence should not be considered, for the reason that the notice to take depositions did not contain his name, and that both at the commencement of the taking of his deposition and before the beginning of the trial the defendants objected to the sufficiency of the notice, and insisted before the notary that his deposition, for that reason, should not be read in the case. If the appellant had properly brought before us in his abstract the fact that the notice did not contain the name of E. H. Talcott, we should be inclined to uphold his contention in this behalf. We think that the letter and spirit of the statute require that the name of the witness whose deposition is desired should be inserted in the notice. Any other construction of the statute would, moreover, place the opposite party in a very embarrassing position, he being unable to ascertain, down to the moment the witness was sworn before the notary, what witness he must prepare himself, or advise his assistant counsel to prepare himself, to meet. The party who desires to take depositions can always ascertain what witness it is necessary for him to examine. There is, therefore, no reason why he should not be required, in the interests of fair play, to disclose to his antagonist in advance the names of the witnesses who will be sworn at the specified time and place. Our statute contemplates that the adverse party shall have such notice as will enable him to reach the place designated, and prepare for the examination. Section 5289, Comp. Laws. It is idle to expect him to prepare for the examination if he has no means of discovering what witnesses will be examined. And it is too clear to admit of countervailing argument that, if the doctrine is once enunciated that the name of the witness examined need not be stated in the notice, which contains at least one name, it will follow that the notice need not contain any

name whatsoever. We believe our statute contemplates the giving of a notice which shall fully apprise the attorney for the opposite party as to the particular witnesses to be examined, to the end that he may determine whether it is necessary for him to be present at such examination, or to employ local counsel for that purpose, and to afford him opportunity for preparation to subject the witnesses to the test cross-examination. The decision of the Michigan Supreme Court in *Patterson* v. *Railway Co.*, 19 N. W. Rep. 761, is directly in point on this question. The court says: "Section 7461, How. Ann. St. provides that when a witness whose testimony is required in any civil cause pending in this state shall live more than thirty miles from the place of trial, or shall be about to go out of the state, and not return again in time for the trial, or is so sick, infirm, or aged as to make it probable that he will not be able to attend the trial, his deposition may be taken in the manner herein provided. The three following sections provide for the notice to be given, by whom, and the time and manner of service. Although the statute does not, in express words, declare that the name shall be given in the notice, yet it is clearly implied by its terms that the name of the witness shall be given, in order to apprise the adverse party who it is he proposed to examine, as well as the time and place where he shall be examined." See, also, *Pape* v. *Wright*, (Ind. Sup.) 19 N. E. Rep. 459-462; *Robertson's Adm'rs* v. *Campbell*, 1 Overt. 172; *Smith* v. *Westerfield*, (Cal.) 26 Pac. Rep. 206; *Strayer* v. *Wilson*, (Iowa,) 7 N. W. Rep. 7. But the point is not properly before us, for the reason that the appellant has failed to incorporate in his abstract the notice to take depositions. Although the case comes here for a trial *de novo*, the rules of this court relating to printed abstracts are nevertheless applicable. On the face of the abstract, it does not appear that the notice was insufficient.

It is next contended that the witness Talcott does not testify to a timely service of notice of dishonor on the defendants, or, indeed to the service of any such notice at all. The evidence does not justify this claim. In this connection a further reference to the facts is

necessary. The plaintiff was the indorser upon the note sued upon. At the time it fell due it was the property of certain indorsers, who delivered the same to the National Park Bank, of Livingston, Mont., for collection. That bank forwarded it to the James River National Bank, where it was payable; and on the day it fell due it was presented for payment by a notary, and notice of its dishonor was given by mail to the Livingston bank. Immediately on receipt of such notice, the Livingston bank mailed to the defendants at Rockfeller, Ill., a sufficient notice of dishonor. It accurately described the note, stated the facts of presentment, demand, and dishonor, and notified the defendants that the holders looked to them for payment, The president of the bank testified that from considerable correspondence with the defendants he considered that that was their place of residence. And it is not here claimed that it was not the proper place to which to mail them notice of dishonor. While it is doubtless the case that neither the Jamestown bank nor the Livingston bank was at any time the owner of this paper, and while it is apparent that their sole relation to it was that of collecting agent, yet it is clear, both under the authorities and under our statutes, that for the purpose of giving notice of dishonor, and of determining whether sufficient diligence has been employed to charge indorsers, each one of these banks is to be treated as a purchaser in due course of the paper. Comp. Laws, § 4506; 3 Rand. Com. Paper, § 1241. Our statute provides: "When the holder of a negotiable instrument, at the time of its dishonor, is a mere agent for the owner, it is sufficient for him to give notice to his principal in the same manner as to an endorser, and his principal may give notice to any other party to be charged, as if he were himself an endorser. And if the agent of the owner employs a sub-agent, it is sufficient for each successive agent or sub-agent to give notice in like manner to his own principal." It is apparent that the Livingston bank was not a stranger to the paper within the rule that notice given by a stranger is ineffectual. Section 4500, Comp. Laws, declares that

notice may be given by a holder of the paper, and the provisions of § 4506 show that the word "holder" in § 4500 is not there used as synonymous with "owner," for § 4506 declares that the holder who is a mere collecting agent may give the notice. A notice given by a proper person or corporation inures to the benefit of all parties to the paper whose right at that time to give notice to the particular parties notified is not lost. Section 4508, Comp. Laws. That the plaintiff had not lost his right to give notice at the time the Livingston bank mailed notice to the defendants does not admit of controversy. He was an indorser of the paper before it passed into the hands of the Livingston bank for collection, and was not notified by the Jamestown bank of the dishonor thereof. At the time the Livingston bank mailed the notice to the defendants his right to give a similar notice had not expired. He had not yet been himself notified, and he would have until the next day after receiving notice in which to serve notice on the defendant and such other indorsers as he might desire to hold. Sections 4505, 4507, Comp. Laws. That the Livingston bank mailed to defendants notice the very day it received notice from the Jamestown bank is evident from the testimony of the president, who states that the notice was sent immediately upon receipt of notice from the Jamestown bank.

A single question remains. The complaint averred that the plaintiff purchased the note, and was at the time of the commencement of the action the holder and owner thereof. The evidence discloses the fact that the plaintiff was an accommodation indorser, and as such was compelled to take up the paper. That this gave him title to the same, and the right to sue thereon, cannot be doubted. It is true that there is a variance between the allegations of the complaint and the evidence touching the mode of obtaining title; but the evidence was not objected to on that ground, and it is therefore our duty to treat the complaint as amended to conform to the proof. Finding no reason for arriving at a conclusion different from that reached by the learned trial judge.

The judgment of the District Court is affirmed.    All concur.

(69 N. W. Rep. 188.)

NOTE—Notice for depositions in the absence of prejudice shown is not fatally defective for not stating street and number of notary's office. *Moore* v. *Booker*, 4 N. D. 543. Certificate to deposition need not show that notary is not a relative of either party or otherwise interested in the action. *Moore* v. *Booker*, 4 N. D. 543. A general objection that it does not appear that witness was out of the county or that the notice for taking was appended to the deposition is not sufficient to exclude it. *Caledonia G. M. Co.* v. *Noonan*, 3 Dak. 190; *Bank* v. *Sherman*, 70 N. W. Rep. 647. In the absence proof to the contrary it will be presumed by the appellate court that the proper foundation was laid for the admission of depositions in evidence. *Caledonia G. M. Co.* v. *Noonan*, 3 Dak. 190. What is sufficient filing of depositions under the statute. *Stone* v. *Crow*, 2 S. D. 526. When question of insufficient time will be deemed waived. *Bem* v. *Bem*, 4 S. D. 138. Notice held sufficient. *Moline P. Co.* v. *Gilbert*, 3 Dak. 239; *Case T. M. Co.* v. *Pederson*, 6 S. D. 140.