## TOOTLE v. PAYNE et al.

No. 10107—Opinion Filed June 21, 1921.

(Syllabus.)

### 1. Guardian and Ward—Sale of Ward's Land——Action by Ward to Set Aside for Fraud.

Where a father is appointed guardian of his minor son and applies to the county court for an order of sale to sell the minor's land, and procures an order to sell said land

at private sale and makes a return into court showing a purported sale for cash to another son, and upon said return secures an order confirming said sale to said son, and afterwards executes a guardianship deed and said deed recites a cash consideration covering the amount of the purported bid and it develops that the son, who is purported purchaser, put in no bid for said land and did not pay the consideration or any part thereof to the guardian—held such facts constitute a fraud upon the estate of the ward and the sale may be set aside in an action of the ward against the purchaser or any other person who acquires rights in said land with knowledge or notice of such fraud. Held, further, in a suit by the ward and where his proofs show the above state of facts, and the defending purchasers introduce no proofs, but present a demurrer to the plaintiff's evidence and the trial court sustains same, such holding is error.

**2. Vendor and Purchaser — "Bona Fide Purchaser."**

The essential elements which constitute a bona fide purchaser are: First, payment of a valuable consideration. Second, the absence of notice. Third, presence of good faith. If any one of these essential elements is lacking, a person is not a bona fide purchaser as the term is known to the authorities. The consideration must be actually paid, at least in the cases of a trust. The doctrine of bona fide purchaser applies only in favor of a purchaser who has legal title, and does not apply in favor of a bare equity. If a second purchaser for value and without notice and in good faith, purchases from the first purchaser, who is charged with notice, he thereby becomes a bona fide purchaser and is entitled to protection.

**3. Guardian and Ward — Fraudulent Sale of Ward's Lands—Subsequent Innocent Purchaser—Burden of Proof.**

Where a sale of a minor's land is held to be fraudulent and a subsequent purchaser, as against an attack upon such sale, sets up the defense of bona fide purchase, the burden is upon such one to prove that he is an innocent purchaser within the definition of that term above given. This is so since none of the elements of an innocent purchaser are presumed in the face of an admitted fraudulent sale of a minor's land. Even the recital of a consideration in the contending purchaser's deed, while prima facie evidence of a paid consideration as between him and his immediate grantor, is no such evidence as against the defrauded ward, and the burden is upon the purchaser to prove actual payment.

**4. Depositions—Admissibility — Motion to Suppress.**

Where a motion is made to suppress a deposition of a witness who is a resident of the county in which the suit is pending, and in which the deposition is sought to be used, for the reason that the notice to take such deposition did not set out the statutory grounds for the use of such deposition, and the trial court sustains such motion and suppresses said deposition, held, that under sections 5073, 5087, and 5079, Rev. Laws of Oklahoma, 1910, it is not necessary to set out the statutory grounds permitting the use of said deposition in the notice, and where, at the time said deposition is presented, the one presenting same offers to show or does show by evidence any one of the three grounds stated in section 5073, supra, it is error to sustain such motion or to refuse permission to read such deposition.

Error from District Court, Sequoyah County; John H. Pitchford, Judge.

Action by Charles Tootle against W. W. Payne and others for possession of land and damages. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Joe M. Lynch and C. C. McNabb, for plaintiff in error.

W. L. Curtis for defendants in error.

ELTING, J. This suit was commenced in the district court of Sequoyah county, Oklahoma, on the 13th day of November, 1916, by petition being filed by the plaintiff, Charles Tootle, against W. W. Payne, Iva Payne, and Jess W. Watts, defendants, to recover the possession of the N. E. ¼ of the S. W. ¼ and lot 6 of section 18, Twp. 10 N., R. 24 E., in Sequoyah county, Oklahoma, containing 78.86 acres. Also asked for the recovery of damages in the sum of $1,200 for the unlawful use and occupancy of said land by said defendants.

In the second count of his petition the plaintiff alleged grounds for an action to quiet title in the plaintiff, alleging, further, that he was a citizen by blood of the Cherokee Nation and that said land had been allotted to him as his proportionate share of the lands of the Cherokee Nation.

The defendants filed a demurrer to the petition, and the same was overruled by the court, and two of the defendants, W. W. Payne and Iva Payne, by their attorneys, Frye & Frye, filed an answer, denying each and every material allegation of the petition, except what were specifically admitted. They admitted that the plaintiff was an enrolled citizen of the Cherokee Nation, and that the lands described in the petition were alloted to the plaintiff. They denied that the plaintiff was the owner of the land and entitled to the immediate possession thereof. They denied that they were in unlawful possession or that they were indebted to the plain-

tiff in the sum of $1,200 or any other sum by reason of rents on property wrongfully held.

To the second count they denied that the plaintiff was entitled to immediate possession, setting up the fact that W. W. Payne and Iva Payne were the owners in fee simple of the lands described in the plaintiff's petition, and that their grantor purchased said land from Harry Tootle, They alleged that John Tootle, father of Charles Tootle, the plaintiff, and as the legal guardian of Charles Tootle sold said land through a guardianship proceeding in the county court of Sequoyah county to Harry Tootle, and executed a guardianship deed to him dated February 18, 1909. That thereafter, and on the 17th day of December, 1910, Harry Tootle, joined by his wife, Alice Tootle, executed and delivered to E. M. Frye a warranty deed to said lands. That on the 9th day of June, 1911, E. M. Frye, joined by his wife, Mattie Frye, and for a good and valuable consideration in hand paid by the defendants, executed a deed to W. W. Payne and Iva Payne, and that all of said deeds were placed on record in the county of Sequoyah. In an amendment by interlineation to said answer, the defendants pleaded the statute of limitation and that the plaintiff had not commenced said suit within two years after he reached his majority, and alleged that the defendants were innocent third parties and had purchased said lands in good faith and purchased the same in the regular course of business and for a good and valuable consideration.

Jess W. Watts- the other defendant, filed a separate answer, in which he claimed an interest in said land as the guardian of Dan Tucker, a minor, in which he repeated the allegations in the answer of the first defendants and as to their claim of title, and that he, as the guardian of Dan Tucker, loaned $600 of said minor's money to W. W. Payne and Iva Payne, and to secure the payment of said loan he took a mortgage on the land sued for herein; that said mortgage was taken on the 25th day of March, 1915, and was duly recorded in the county of Sequoyah on the 27th day of March, 1915, and that he took said mortgage without notice either actual or constructive as to the rights of said plaintiff to said lands; and asking for foreclosure of his mortgage. A copy of said mortgage was attached to the said answer.

To the answer of W. W. Payne and Iva Payne, Charles Tootle filed a reply, in which he denied the allegations of the defen-

dants' answer except such allegations as he specifically admitted. He admitted that John Tootle was appointed guardian of the plaintiff. Admitted that John Tootle filed a petition praying for an order of sale, and that the county court made an order authorizing said guardian to sell said lands. Denied that the guardian did, on the 27th day of November, 1909, or at any other time, sell the land of the plaintiff described in the plaintiff's petition to Harry Tootle, the purported purchaser of said lands. Alleged that Harry Tootle was the son of John Tootle, guardian of Charles Tootle, and was a brother of Charles Tootle. That the order of sale was procured by misrepresentations made to, and fraud practiced upon, the county court of Sequoyah county by John Tootle, in that he falsely represented that it was necessary to sell said lands for the purpose of educating, maintaining, and supporting the ward, the plaintiff in this suit. That said guardian did not have the care and custody of the plaintiff, and was not contributing anything to the plaintiff's support, and that the plaintiff was living with other people and earning his own livelihood. That said sale was fraudulent for the further reason that the guardian, John Tootle, made a false and fraudulent return of sale to the court wherein he stated that he had sold said lands to Harry Tootle. That Harry Tootle never did buy said lands, never put in any bid thereon for $1,000, or any other sum, and the said John Tootle falsely stated that he had sold the land to Harry Tootle for $1,000 cash in hand paid by the purported purchaser, and that the said false representations were made to deceive the court and in furtherance of a conspiracy to cheat and defraud the plaintiff out of his lands. That no part of said consideration was ever paid to John Tootle, the guardian, for the use and benefit of plaintiff, Charles Tootle. The reply denied that E. M. Frye was an innocent purchaser for a valuable consideration, and alleged that Frye was informed of the fraudulent nature of the said sale, and that Frye well knew that Harry Tootle had never paid anything for said land. Denied that W. W. Payne and Iva Payne were innocent purchasers in the purchase of said lands. And by reason of said facts set forth, alleged Harry Tootle never had any valid title to said lands and never conveyed any title to E. M. Frye, and that E. M. Frye had no valid title to convey to W. W. Payne and Iva Payne.

To the reply of the plaintiff, the defendants filed a demurrer. Said demurrer was, by the court, overruled, and thereupon the defendants filed a reply, denying the

new matters pleaded by the plaintiff.

Said cause was tried to the court without a jury on the 25th day of January, 1918. The plaintiff tendered his proofs to the court and offered the deposition of John Tootle, and the defendants moved to suppress said deposition on the ground that John Tootle was a resident of Sequoyah county at the time said desposition was taken and for the reason that the notice to take the deposition did not set forth the reasons why John Tootle's deposition should be taken. The reason why John Tootle's deposition was offered to the trial court was that he was sick, old, decrepit, and unable to attend the trial. The court sustained the motion to suppress the deposition and refused to permit the same to be read in evidence, for the reason that the notice failed to include the statutory grounds for reading the same, to which action of the court the plaintiff excepted.

The evidence of John Tootle in said deposition was as follows, omitting the caption and certificate:

"John Tootle appearing as a witness on behalf of the plaintiff, Charles Tootle, who after being sworn on oath testified as follows:

"Q. What is your name? A. John Tootle.

"Q. What is your post-office address? A. Marble City, Okla.

"Q. What is your age, Mr. Tootle? A. Sixty-two.

"Q. Is Charles Tootle your son? A. Yes.

"Q. Is Harry Tootle your son? A. Yes.

"Q. Was you at any time appointed guardian of both Harry and Charles Tootle, your sons? In the county court of Sequoyah county, Okla.? A. Yes.

"Q Was you a resident of Sequoyah county at the time you was appointed guardian of Harry and Charles Tootle? A. Yes.

"Q. Are you now a resident of Sequoyah county, Okla.? A. Yes.

"Q. Was you the guardian of Charles Tootle on the 8th day of November, 1909? A. Yes.

"Q. Was you the guardian of Harry Tootle at that time? A. I'm not sure.

"Q. Had you been released as Harry's gurdian a short time before? A. I don't know.

"Q. Did you sell the lands of Charles Tootle while you was his guardian? A. A sham sale.

"Q. Was it Charley's own allotment described as being the N. E. ¼ of S. W. ¼ and the S. E. 10 acres of lot 6 and the N. E. 10 acres of lot 6 and the W. 18 and 86-100 acres of lot 6 all in section 18, twp. 10 N. range 24 containing 78.86-100 acres, which you sold? A. Yes.

"Q. To whom was this land sold? A. Supposed to be to Harry Tootle.

"Q. How much did you receive for this land? A. Nothing.

"Q. Did Harry Tootle file his bid for the land with you as guardian of Charley Tootle? A. No. Harry did not put in any bid.

"Q. Has Charles Tootle received any part of the proceeds from the sale of the lands? A. Not a nickel I know of.

"Q. Did you, Mr. Tootle, receive the $1,000.00 consideration mentioned in the order confirming sale dated Nov. 8th, 1909, wherein you as the guardian of Charley Tootle, a minor. sold to Harry Tootle the lands of said Charles Tootle, your ward? A. No.

"Q. Did Charles Tootle make his home with you while you were his guardian? A. A part of the time he stayed with me.

"Q. Have you ever contributed anything toward his support since the date of this sale? A. Some. Not much.

"Q. Did you send Charley to school while you were his guardian? A. Yes, as much as he would go.

"Q. How long have you been blind, Mr. Tootle? A. Over three years.

"Q. Was you blind during the entire time you was guardian of Charles and Harry Tootle? A. I was not quite blind. I could not see much.

"Q. I will ask you again, Mr. Tootle, if at any time you received $1,000.00 from Harry Tootle for the lands of Charles Tootle, who was your ward at that time? A. No.

"Q. Did you as the guardian of Charles Tootle have the care and custody of your ward at the time you was appointed his guardian? A. Yes.

"Q. Who filed the papers in the guardianship case of Charles Tootle for you? A. C. O. Frye.

"Q. At the time you signed the guardian's deed conveying Charley Tootle's land to Harry Tootle, did you know to whom you was selling the land? A. Yes.

"Q. When you signed and delivered the deed, did you think you was going to receive the $1,000.00 consideration mentioned in such deed? A. I did not think I would receive a nickel. I deeded to Harry so he could sell and buy other land for Charley, and there was no land bought for Charley.

"Q. Was you paid by anyone for this land at any time or in any way or manner whatsoever? A. No.

"Q. Did you pay the court costs in the sale of this land? A. Charley Frye or R. W. Hines did."

The evidence of Harry Tootle, the purported purchaser of said land, was taken. He testified that he did not put in a bid on the land; did not know the deed had been made to him; paid no part of the consideration, and put a mortgage on the land at the request of banker Hines. The evidence of Joe E. Thornton, court clerk, was taken by plaintiff. He testified that his record did not show a bid in writing. The evidence of Charles Tootle, plaintiff, was taken and the evidence of several witnesses on the rental value and quality of the land, and at the close of the plaintiff's evidence the defendants offered no evidence, but presented to the court the following demurrer:

"If the court please, at this time the defendant demurs to the evidence of the plaintiff, for the reason that the same does not show such a state of facts as would entitle the plaintiff to recover or to relief prayed for in his petition for the reason that it doesn't in any way from a legal standpoint tend to connect or show the defendant, W. W. Payne, was in any way connected with the fraud relied upon by the plaintiff as alleged in his petition and as submitted in the testimony, and the defendants move for a judgment upon the cross-petition in favor of the defendants W. W. Payne and Iva Payne quieting the title in them. I also desire to make the same motion as far as the rights of the defendant Jess W. Watts under his mortgage as guardian of Dan Tucker is concerned."

The trial judge sustained said demurrer, holding that E. M. Frye, W. W. Payne, Iva Payne, and Jess W. Watts were innocent purchasers for value and without notice, and denied the plaintiff the relief prayed for. Plaintiff filed a motion for a new trial, and the same was overruled by the court; appeal prayed, and the cause appealed to this court for review.

The plaintiff, in his petition in error, presents seven assignments of error. The plaintiff, however, in his brief, only argues three propositions, and we will only consider these propositions herein. They are as follows: First, that the trial court erred in quashing the deposition of John Tootle. Second, that the guardian sale involved in this action was fraudulent and void. Third, that the guardian sale being fraudulent the burden of showing themselves innocent purchasers for value without notice was upon the defendants.

Upon the first proposition, we think that the court committed error in refusing to hear and consider the deposition of John

Tootle. Section 5073 of the Revised Laws of Oklahoma, 1910, reads as follows:

"Deposition. When Used. The deposition of any witness may be used only in the following cases:

"First. When the witness does not reside in the county where the action or proceeding is pending or is sent for trial by change of venue, or is absent therefrom.

"Second. When, from age, infirmity, or imprisonment, the witness is unable to attend court or is dead.

"Third. When the testimony is required upon a motion, or in any other case where the oral testimony of the witness is not required."

Section 5079 sets forth what is necessary to be included in a notice to take depositions, and does not require the setting forth of the grounds enumerated in section 5073 and defining when deposition can be used. Section 5087 reads as follows:

"Unavailability of Witness Must Be Shown. When a deposition is offered to be read in evidence, it must appear to the satisfaction of the court that for some legal cause the attendance of the witness cannot be procured."

We think that the plain import of these statutes is sufficient to indicate that the setting forth of the inability of the witness to attend court, in the notice, is not required, and that under the provision of said statute either party to the suit has the right to take depositions anytime suit is legally commenced and the same can be used in the trial of the cause upon a showing at the time the deposition is offered, where the statutory ground, permitting it to be used, is shown. The following is a portion of section 149 "C", 18 C. J. 662:

"The notice should be in substantial compliance with the requirements of statutes or rules prescribing it. Thus a statutory requirement of written notice cannot be dispensed with by order of court, although in the absence of statutory provision or rule of the court to the contrary, a verbal notice has been held sufficient when the fact of notice is not denied. Unless required by statute, or court rule, the notice need not state the reason for taking the deposition, the time when the court in which the cause is pending is to be held, the materiality of the witness' testimony where the fact appears on the face of the deposition, or the nature and kind of evidence deponents will be called on to give, nor invite the opposite party to cross-examine the witnesses; and the copy served need not be verified or attested."

The following is quoted from Ex parte Abbott, 7 Okla. 78, 54 Pac. 319:

"A party to a suit is a competent witness for himself, and may be called as a witness

by his adversary, and stands precisely as another witness in relation to that suit, with the same rights and duties, neither more nor less. That the petitioner resided in Oklahoma county, was in good health, contemplated no prolonged absence from the county, bt expected to be present at the trial of the cause, is not made an exception to the right of a party to a suit to have his deposition taken. (Ex parte Priest, 76 Mo. 229.) The provisions of section 358 of the Code, providing that the deposition of a witness may be used on the trial of the cause only in the cases where the witness does not reside in the county where the action or proceeding is pending, or is absent therefrom or by reason of age, infirmity, or imprisonment is unable to attend court, or is dead, do not affect the question of the right to take the deposition, but only affect the right to use the same upon the trial of the cause. The provisions of the Code of Civil Procedure are ample to give authority for the taking of the petitioner's deposition, to require him to attend before the court or officer to be sworn and to testify, and, on his failure or refusal so to do, to commit him for contempt until he shall show a willingness to comply with the order of the court or officer; provided, of course, that the committing officer is one authorized to take depositions."

The case of Dietrich et al. v. Dr. Koch Vegetable Tea Co., 56 Okla. 638, 156 Pac. 188, states the following:

"The plaintiffs in error first attack the notice served by plaintiff for the taking of depositions for the reason that said notice did not contain the names of the witnesses whose depositions were to be taken. In support of their contention, counsel have cited the cases of Donaldson v. Winningham, 54 Wash. 19, 102 Pac. 879 and Ashe v. Beasley, 6 N. D. 191, 69 N. W. 188, which cases are based upon statutes almost identical with ours; each holding that, if not within the letter, it is within the spirit of the statute that the names of the witnesses whose depositions are to be taken should be set out in the notice, so that the adverse party may be able to determine whether he desires to be represented at the taking of the depositions.

"There is much reason and force in such a holding, and, if the question were an open one in this jurisdiction. we would be inclined to adopt that ruling; but owing to the fact that the settled construction of this statute in this state and in Kansas, from where we obtained the same, is that it is unnecessary to set out the names of the witnesses in the notice to take depositions, we are not inclined to disturb a procedure acquiesced in and unquestioned for so long a time."

See, also, Eby et al. v. Winters (Kan.) 33 Pac. 471; In re Simon Abeles, 12 Kan. 451, opinion by Brewer J. The first, second, and third paragraphs of the syllabus of the last cited Kansas case read as follows:

"1. A party to an action can compel a witness to give his deposition in the case prior to the trial, even though such witness resides in the county in which the action is pending.

"2. The Code provides that the deposition of a witness may be used when the witness is absent from the county at the time of the trial, or when from age, infirmity, or imprisonment, the witness is unable to attend court, or is dead. Given a right to use a deposition under the contingencies named, gives the right to prepare for those contingencies.

"3. The giving of testimony, whether on trial, or by deposition, is not a privilege of the witness, but a right of the party."

As to the second proposition cited by the plaintiff in error we do not think that it was the purpose of the trial court to hold that the guardianship sale, in the instant case, was a legal sale. The uncontroverted facts show that the sale was a sham sale, as testified by John Tootle, the guardian. His first answer relative to the sale in his deposition was that it was a sham sale. John Tootle testified that he received no consideration for the deed as the guardian of Charles Tootle. Harry Tootle, in his evidence, says he never put in a bid for the land and paid no consideration for the sale of the land to him. As between Harry Tootle and Charles Tootle, there is no question but that the sale is fraudulent and of no effect. The trial court so held.

The third question is, Did the court commit error in sustaining the demurrer, and thereby, in effect, holding that the evidence of the plaintiff was not sufficient to make a prima facie case of fraud as against the defendants and shift the burden to them to show themselves to be innocent purchasers?

The defendants in error, in their brief, contend that since the plaintiff in error did not raise the question of the burden of proof, either in the trial or in his motion for a new trial, nor assign it as error in his petition in error in this court, he cannot contend herein for a reversal upon such error. We will state, however, that it was not necessary that the plaintiff do this. When the defendants presented a demurrer to the plaintiff's evidence, they raised, for the consideration of the court, the weight of the plaintiff's evidence, the legal inference to be drawn therefrom, and the question of the burden of proof. The trial court, in his judgment, in effect, found the sale to be fraudulent and void. The uniform holdings of this court are that where a guardianship sale is found to be fraudu-

lent and void, and where third parties set up a claim to the property sold, the burden is upon them to show the good faith of their purchase and that they bought for value and without notice, either actual or constructive, of the equities of the former ward. And furthermore, the burden is upon the said purchasers, and as against the ward, to show the actual payment of a consideration, even though the deed they claim under relates a consideration. The defendants in error offered no proofs, and hence have not, as this record shows, done anything to relieve themselves of the burden that the plaintiff's evidence placed upon them.

In dealing with this proposition it probably is not incumbent on us to deliver a long dissertation on, When does a purchaser buy land subject to the rights of prior parties, and when he does not? Land purported to be bought from an idiot is an absolute nullity, and no one can be an innocent purchaser of one who buys from an idiot:

"A deed of an insane grantor is absolutely void, and, therefore, a bona fide purchaser from the grantee takes no title." (German Savings, etc., Soc. v. DeLashmutt, 67 Fed. 399, 400.)

This is based upon the theory that no legal title is parted with and cannot be. It is only in such cases where legal title is parted with, but by reason of fraud or other equitable reasons and as between the seller and the first purchaser, the effect of the legal title is destroyed and held to be void. As to all such titles subsequent purchasers in good faith for a valuable consideration and without notice, either actual or constructive, are sustained by their legal titles and the equity of the first seller cannot prevail against them.

The following is quoted from the last cited case:

"The doctrine of bona fide purchaser is not applied to protect an equity as against a legal estate, but to 'protect the legal title against a prior equity, by uniting with such legal title an equity arising from the payment of money, and securing the conveyance without notice and a clear conscience."

The distinction between nullity and voidness is discussed in the case of Adams Oil & Gas Co. v. Hudson, 55 Okla. 386, 155 Pac. 220.

The following is quoted from pages 1147-8-9, 8 C. J., under the head of "Bona Fide Purchaser":

"The essential elements which constitute a bona fide purchaser are a valuable consideration, absence of notice, and the presence of good faith. If any one of these essential elements is lacking, a person is not a bona fide purchaser as the term is known to the authorities. The consideration must be actually paid, at least in cases of trust. The doctrine of bona fide purchase applies only in favor of the purchaser of a legal title; it does not apply in favor of a bare equity. If a second purchaser for value and without notice purchases from a first purchaser, who is charged with notice, he thereby becomes a bona fide purchaser and is entitled to protection."

The above citation from Corpus Juris mentions the fact that the consideration must be actually paid, at least in cases of a trust.

Upon the question of the burden of proof, both as to a bona fide purchaser and as to the effect of a recital of consideration, the law is set forth in the second and third paragraphs of the syllabus of Adams Oil & Gas Co., supra, as follows:

"2. To constitute a bona fide purchaser, three things must exist: (a) A purchase in good faith; (b) for value; and (c) without notice. And, where a subsequent purchaser interposes the defense of a bona fide purchaser, the burden is upon him to show a purchase for value, and, on his failure to do so, he cannot claim the benefits of a bona fide purchaser.

"3. The recital in a deed that the consideration has been paid is prima facie evidence as between the parties thereto, but as to strangers and persons claiming in opposition to the deed it is no evidence."

The rule laid down in this syllabus has been followed and has become the rule of decision in this state. The most recent decision confirming this proposition is the case of McIntosh v. Holtgrave et al., 79 Okla. 63, 191 Pac. 739; opinion by McNeill, J., and the law is restated in the 5th paragraph of the syllabus of that decision.

In the case of Glory v. Bagby et al., 79 Okla. 155, 188 Pac. 881, opinion by McNeill, J., the first paragraph of the syllabus reads as follows:

"Where parties procure a three-fourths Cherokee Indian to be appointed guardian of his minor child, for the purpose of having the guardian sell the estate of his ward, and said estate is sold at guardian's sale and the sale confirmed by the county court, and a deed is executed and delivered to the purchaser and no part of the purchase price has been paid, such facts constitute a fraud upon the estate of the ward, and the sale may be set aside in an action by the ward against the purchaser, or any other person who acquires rights in said land with knowledge or notice of such fraud."

Brett, Commissioner, in the case of Burton v. Compton, 50 Okla. 365, 150 Pac. 1080, quotes from Lord Chancellor Thurlow of

England in Fox v. Mackreth, the second leading case in equity (White and Tudor 722):

"That trustees expose themselves to great peril in allowing their own relatives to intervene in any matter connected with the execution of the trust; for the suspicion which that circumstance is calculated to excite, where there is any other fact to confirm it, is one which it would require a very strong case to remove."

Brett, Commissioner, then gives the substance of another portion of Chancellor Thurlow's opinion, as follows:

"And he says, in substance, that the rule rests upon public policy, and such a purchase will not be permitted in any case, however honest the circumstances; for the general interest of public justice requires it to be destroyed in every instance, and that: 'From general policy and not from any peculiar imputation of fraud, a trustee shall remain a trustee to all intents and purposes.'"

And later in the Commissioner's opinion appears the following:

"Besides, it is a well-established rule that one who purchases at a guardian's sale, or one who purchases from the vendee of a guardian's sale, must take notice at his peril of the authority of the guardian to make the sale.

"And, applying these rules to the case at bar, we think Mr. Burton must be charged with actual notice of the channel through which his grantor claimed title, and the relationship existing between her and her grantor, and is, therefore, not an innocent purchaser."

We do not find any cases where the same rule that is applied by Commissioner Brett to a case where the wife is purchaser, would be applied to any other relative of the guardian, unless Chancellor Thurlow's holding has that effect. We are not deciding herein that the rule laid down in Burton v. Compton applies where the sale is made to a son of the guardian and a brother of the ward and to a sale such as in the instant case. We, however, hold that the policy of the law is to protect the rights of wards against the fraud of guardians and the selfish designs of third parties, and that the fact that a son of the guardian and brother of the ward is a purchaser at such a guardianship sale is sufficient to arouse the suspicion of a subsequent purchaser and place upon him the duty of inquiry as to the good faith of the sale.

The effect of the holding in the case of Burton v. Compton is virtually to make the sale by a guardian to his wife void upon its face. In other words, a sale to the wife is ipso facto void, under the holding in that opinion, no matter that the sale may be made in good faith and for value. To such sales, when the rule is applied that a purchaser must take notice of what his title papers show upon their face and the surname of the purchaser and of the guardian show upon the face of a guardianship record to be the same, this would place the duty upon the purchaser to inquire further, which would disclose to him the relation that existed between the guardian and the purchaser, and as soon as such knowledge had come to the purchaser he would be in possession of such facts as showed the sale to be void.

Some courts hold that the good faith of a purchase by the wife of a guardian may be shown. and that the burden, however, is upon the purchaser to snow the good faith. The case of Burton v. Comptor however, commits this court to the more rigid rule. While public policy requires the safeguarding of wards against the fraud of their guardians and those who deal with them, public policy also requires the protection of the rights of bona fide purchasers and incumbrancers, and the courts lean strongly toward their protection in guardianship and probate sales which are asserted to be fraudulent for reasons not apparent on the face of the proceedings, but being such fraud as exists by reason of secret agreements between the guardian and purchaser at the guardianship sale. The reason for this rule is well stated by Mr. Justice Hardy in the case of Allison v. Crummey, 64 Okla. 20, 166 Pac. 69.

In the case of Langley v. Ford et al., 68 Oklahoma, 171 Pac. 471, Mr. Justice Hardy refused to apply the rule laid down in Burton v. Compton, supra, to a sale by a guardian to one Hays, who paid no consideration and who reconveyed to the wife of the guardian, and instead applied the rule laid down in Allison v. Crummey, heretofore cited, and designated the transaction as voidable but not absolutely void, but held the Deming Investment Company, who had taken a mortgage on the land, not to be innocent purchasers by reason of notice, that had come to their local agent, of the fraudulent nature of the transaction conveying the minor's interest.

The following Oklahoma cases discuss the various propositions, as do the cases heretofore cited: Alliance Trust Co. v. Choate, 76 Okla. 269, 185 Pac. 113; Cushing v. Choate, 77 Okla. 90, 186 Pac. 481; Tucker v. Leonard, 76 Okla. 16, 183 Pac. 907; Brooks v. Reynolds, 37 Okla. 767, 132 Pac. 1091.

The last paragraph of the syllabus of the case of Tucker v. Leonard, 76 Okla. 17, 183

Pac. 907, is as follows:

"Purchasers of land which has been fraudulently transferred to their grantor must establish the good faith of their purchase, and it cannot be presumed."

In view of the fact that the judgment of the trial court in the instant case is going to be reversed and this cause remanded for a new trial, it may not be proper for this court to further discuss the evidence in the record and to draw inferences therefrom. It is probably sufficient for this court merely to hold that the trial court committed error in sustaining the demurrer to the evidence in the instant case.

Before we close, however, we want to refer to the portion of the case affecting the rights of Jess. W. Watts, mortgagee and guardian of Dan Tucker. We will state that the same rule applies to encumbrancers as applies to subsequent purchasers. In this connection, see Langley v. Ford et al., heretofore cited. We desire to suggest, in this connection, that even if it be held that the mortgagee is protected under the rules of innocent purchasers, this does not necessarily prevent the plaintiff recovering any equity that might be in the land. This, of course, is elementary and need not really have been mentioned.

The judgment in the instant case, therefore, is reversed and remanded for a new trial, not inconsistent with the holdings herein.

HARRISON, C. J., and McNEILL, KENNAMER, and NICHOLSON, JJ., concur.