**STATE ex rel. COMMISSIONERS OF LAND OFFICE v. PHILLIPS PETROLEUM CO.**

No. 35183.

Supreme Court of Oklahoma

April. 7, 1953.

·Rehearing Denied June 30, 1953.

---

R. H. Dunn, Rupert E. Wilson, Jr., and A. M. DeGraffenried, Oklahoma City, for plaintiff in error.

Rayburn L. Foster, Harry D. Turner and S. E. Floren, Jr., Bartlesville, for defendant in error.

HALLEY, Chief Justice.

Phillips Petroleum Company commenced this action in the District Court of Garvin County against the Commissioners of the Land Office to quiet its title to an oil and gas lease covering an undivided one-half interest in the minerals in 60 acres of land in that county. The parties will be referred to as "Phillips" and "Commissioners".

The facts from which this controversy arose are as follows: The Commissioners acquired the land involved by foreclosure proceedings. Through their regular procedure the Commissioners determined to offer the land for sale. It was duly appraised and being deemed valuable for oil and gas, it was ordered that the surface rights only be offered for sale. The Notice of Sale published provided that the purchaser of this particular tract, being "Tract No. 18" in the Notice of Sale, would receive "no mineral rights whatsoever." W. H. Lamascus was the highest bidder for this tract.

November 4, 1940, the sale was approved by the Commissioners and a Certificate of Purchase ordered issued to W. H. Lamascus. A clerk in the office of the Commissioners inadvertently failed to change the printed form of Certificate of Purchase to reserve all of the minerals and issued a Certificate of Purchase reserving only one-half of the minerals. This error and a similar one in issuing Patent formed the basis of this controversy.

December 21, 1945, W. H. Lamascus and wife executed an oil and gas lease covering an undivided one-half interest in the minerals. This lease was assigned to Phillips.

February 10, 1947, after full payment of the purchase price, the Commissioners approved the issuance of a patent. In the preparation of the Patent the same error was made as in the Certificate of Purchase in that only 50 per cent of the minerals were reserved to the State.

When the above mistakes in the Certificate of Purchase and Patent were discovered by the Commissioners they had issued a Correction Certificate of Purchase and Correction Patent and, on November 29, 1947, without notice to W. H. Lamascus, reserved all of the minerals to the State in accordance with the prior action of the Commissioners and the published Notice of Sale which constituted the offer to sell to the highest bidder the surface rights only.

June 20, 1949, Phillips commenced this action alleging ownership of an oil and gas lease covering an undivided one-half interest in the minerals underlying the land, the issuance of Certificate of Purchase to the lessor Lamascus reserving only one-half of the minerals, the issuance of the Correction Certificate of Purchase and the Correction Patent. Phillips alleged that it was a bona fide purchaser and that the Commissioners are estopped from claiming any interest in conflict with the oil and gas lease held by Phillips and prayed that the Correction Certificate of Purchase and Correction Patent be canceled and its title quieted.

The Commissioners filed a Motion to Dismiss on the ground that it was a suit against the State without the express permission of the Legislature. The Motion was overruled as were two demurrers by the Commissioners who then filed a general denial except that they admitted the ac-

quisition of the land, the proceeding of the sale reserving all of the minerals, the error in the issuance of Certificate of Purchase and Patent and their effort to correct these mistakes.

Phillips filed a reply and denied that the Commissioners had authority to reserve more than 50 per cent of the minerals. Oral testimony and documentary evidence was introduced. The Court found in favor of Phillips on all issues of law and fact and adjudged it to be the owner of a valid oil and gas lease covering one-half interest in the minerals and canceling the Correction Certificate of Purchase and Correction Patent as clouds upon the title of Phillips in its oil and gas lease. The Commissioners have appealed and submit their argument under six propositions which will be considered in the order submitted.

The Commissioners first contend that their Motion to Dismiss should have been sustained. It is based upon the theory that this is an action against the State in its sovereign capacity and that such suit cannot be maintained without the express permission of the Legislature and cites Sections 1, 2, and 3, of Art. XI of our State Constitution wherein the State accepts all grants of land and donations of money made by the United States under the provisions of the Enabling Act and other Acts of Congress, and all monies derived from the sale of such land as a sacred trust for the use and benefit of the common schools of this State as a permanent school fund. Section 2 provides that the principal be deemed a trust fund held by the State and that it may be increased, but shall never be diminished.

They cite the case of Board of County Commissioners of Woods County v. State, 125 Okl. 287, 257 P. 778, 781, 53 A.L.R. 1128, wherein this court said:

"We do not think the state was engaged in a private enterprise in loaning the school fund on real estate mortgages for the reason of the mandatory provisions of the Constitution. The state was performing a governmental function, to which it was bound, which it pledged its faith to perform before it came into existence as a state."

The case of Goodin v. Commissioners of the Land Office, 174 Okl. 364, 50 P.2d 189, 190, was a suit by the holder of a preference right lease on school land and it was alleged that he had been illegally ousted by the Commissioners. He prayed that his rights be restored or for a money judgment in damages in the alternative. In the second syllabus, it was said:

"In the absence of a permissive grant by the Legislature, a party is without authority to maintain an action against the School Land Commission for possession, or, in the alternative, for damages by reason of alleged illegal ouster, as such action is one against the state."

However, if it be conceded that this action is one against the State in its sovereign capacity, which can only be maintained with the permission of the Legislature, it is pertinent to ask, has such permission been granted? Section 160, 64 O.S.1941, provides in part:

"The Commissioners of the Land Office are hereby authorized and empowered to bring or defend suits in the name and on behalf of the State of Oklahoma in all matters affecting the public lands of the State, and in all matters affecting the loaning, investing, or collecting of school land and State land moneys, of, and belonging to the State * * *."

The language of the above statute is clear and explicit. There is no need or justification for an interpretation of language so simple and clear. It gives the Commissioners power and authority to "bring or defend" suits "in all matters affecting the public lands of the State * *." We conclude that the Legislature has given the Commissioners full power and authority to defend this action and to ask for any affirmative relief necessary to enable them to discharge the duties of their trust.

We next consider the alleged error of the Court in holding that the Commissioners have no authority to reserve more than 50 per cent of the minerals.

The Enabling Act provides in sections 9 and 10 that public lands may be appraised and sold "under such rules and

regulations as the Legislature of the said State may prescribe * * *."

Art. VI, section 32, of our Constitution, after naming five State officers, provides that they shall constitute the Commissioners of the Land Office who shall have charge of the sale, rental, disposal, and the managing of school lands and other public lands of the State and of the funds and proceeds derived therefrom under the rules and regulations prescribed by the Legislature.

■■ The above provisions were recognized by this Court in Magnolia Petroleum Co. v. Price, 86 Okl. 105, 206 P. 1033, 1039, wherein it was said:

"The state now has complete control of such lands to lease or not to lease if it so chooses; to sell or not to sell if it so chooses. * * * Hence the state, by section 32, art. 6, of the Constitution, created the Commissioners of the Land Office, composed of the Governor, Secretary of State, State Auditor, Superintendent of Public Instruction, and President of the Board of Agriculture, and expressly gave to such Commissioners complete jurisdiction and charge of the sale, rental, disposal, and management of the lands in question, and the funds derived therefrom, under rules and regulations to be prescribed by the Legislature."

Phillips relies upon section 96(c), 64 O.S.1951, which states:

"(c) Upon the full payment of the purchase price of any tract of land sold under the provisions of this Act, the Commissioners of the Land Office shall immediately execute and deliver to the purchaser thereof a patent thereto in fee simple; provided, however, the Commissioners of the Land Office shall, in all cases, reserve and retain forever title to fifty per centum (50%) of all the oil, gas and other mineral rights in and under all lands so sold."

In case of In re Blain, 197 Okl. 459, 172 P.2d 795, 799, the rule was announced that in arriving at the intent of the Legislature the Court may look to other stat-utes upon the same or similar subjects, and said:

"'* * * in the construction of statutes, the legislative intent must govern, and to arrive at the legislative intent, the entire act must be considered, together with all other enactments upon the same subject * *.'"

Section 82(d), 64 O.S.1951, provides:

"Manner of disposal of lands * *. The Commissioners of the Land Office shall reserve and retain forever the title to not less than forty (40%) per centum of all the oil, gas and other mineral rights in and under all lands to be sold; provided further, that the Commissioners of the Land Office are empowered to join in the execution of any oil, gas, or mineral lease on school lands, which have been sold and in which they have retained mineral interests, at their own discretion and without the necessity of advertising as required on State-owned lands. Such reservation is to be set out and included in all Certificates of Purchase and Patents issued to cover lands hereafter sold by the Commissioners of the Land Office. * * *"

Section 92, 64 O.S.1951, authorizes the Commissioners of the Land Office to sell oil and gas or other mineral leases on all public lands under their control.

Section 281 of the same title authorizes the Commissioners to lease for oil and gas any land owned by the State which they deem valuable for oil and gas for a primary term of five years upon such terms and conditions and in such quantities as the Commissioners shall by rules and regulations prescribe.

Section 282 provides that when any public lands are known to contain oil or gas or are deemed by the Commissioners to be valuable for oil and gas purposes, the Commissioners shall segregate such land by entering their findings of record in their office and declare that such oil and gas character exists and that such deposits are segregated from the surface use and withhold the same from sale, lease,

or other alienation except as provided in this article.

 None of the above provisions appear to have been repealed. Repeals by implication are not favored. Smith v. State Board of Education, 190 Okl. 556, 126 P.2d 241. It is a well established rule that the intent of the Legislature must govern and that such intention is to be ascertained by considering together all of the various provisions of its enactments upon any particular subject.

The foregoing provisions relating to mineral interests in State lands where such lands were known or deemed by the Commissioners to be valuable for oil and gas clearly show that it was the intention of the Legislature to give the Commissioners the authority and, in fact, to make it their duty to retain such mineral interests and alienate them only by lease. Section 82 (d) supra explicitly provides for the retention forever of not less than 40 per cent of the minerals in and under all lands to be sold. It is true that section 96(c) supra provides for the retention of 50 per cent of the minerals, omitting the words "not less than", but when we consider all of the acts of the Legislature pertaining to the retention, sale, or lease of the mineral interests, we are forced to the conclusion that the Commissioners may retain all of the minerals in lands being sold where they have found or deem the mineral interest to be of value to the school fund of which they are trustees and are bound to manage for the best interest of the schools of the State.

Did the Court err in canceling the Correction Certificate of Purchase and a Correction Patent? The Commissioners attached to their answer a copy of the Notice of Sale which evidenced their offer to sell the surface rights only. It expressly stated that the purchaser of the tract here involved would receive no interest in the minerals whatsoever.

The record also contains the minutes of the Commissioners when they meet to consider the return and report of sale which was approved. The return of sale disclosed that the Notice of Sale had been duly published. That at the time and place provided in the Notice the land was offered for sale "subject to the terms, conditions, and provisions therein contained," and that Tract No. 18 was sold to W. H. Lamascus as the highest and best bidder therefor. The sale so made was approved by the Commissioners and their secretary ordered to issue a Certificate of Purchase to the purchaser.

Only the surface rights were offered for sale and sold in the only manner authorized by law. No valid sale could be made of an interest not so offered and sold. It is not disputed that the Notice and offer to sell included only the surface rights or that the Commissioners had no authority to sell any interest except by first publishing a Notice of Sale describing land to be sold, the time, place, and terms of sale. It is clear that any sale made by the Commissioners must be made in accordance with their offer to sell as expressed in the Notice.

It is not denied that an error was made in issuing the Certificate of Purchase and Patent. However, the interest claimed by Phillips was attempted to be sold prior to the issuance of Patent. The error was not discovered for some seven years after the sale. When discovered the Commissioners made an effort to correct it by issuing Correction Certificate of Purchase and Correction Patent reserving to the State all of the minerals in accordance with the terms of their offer to sell and sale. These corrected instruments speak the true intent of the parties when the sale was made.

 Equity can correct an erroneous instrument shown to have been the result of an unintentional mistake. To hold that Phillips' claim is valid is to divest the Commissioners of a one-half interest in the minerals which they had not offered for sale or sold and for which they were to receive nothing. This would be a clear violation of their trust. The erroneous Certificate of Purchase and Patent were not issued in compliance with the Enabling Act, the Constitution, or the Statutes. If the Commissioners undertake to exceed their authority, whether intentional or otherwise, they accomplish nothing. Their acts constitute a nullity.

The Commissioners contend that the Court erred in quieting title in Phillips to one-half of the minerals. Under the provisions of section 282, 64 O.S.1951, which provides that where land is known or deemed by the Commissioners to be valuable for oil or gas, such mineral interest shall be segregated from the surface rights and sold only by lease. Here the land to be sold had been deemed valuable for oil and gas by the Commissioners. We think that the requirements for segregation of the mineral interest were substantially complied with by offering for sale the surface rights only. It was error to quiet title in Phillips to an interest not offered for sale or sold.

Phillips contends that it is an innocent purchaser for value and is entitled to protection as a bona fide purchaser. We cannot agree with this contention. Phillips was chargeable with notice of the law. It had constructive notice that the Commissioners were acting as trustees in offering for sale and selling State school lands. It was charged with notice that the Commissioners could only act in compliance with the rules and regulations prescribed by the Legislature and that sections 93 to 98, 64 O.S.1951, prescribe the manner of sale by the Commissioners and that they could only make a valid sale by complying with such provisions. The records of the proceedings of the Commissioners are open to the public. Any citizen may inspect them and are chargeable with notice of any defects or irregularities which an inquiry or examination would have disclosed relative to compliance or non-compliance by the Commissioners acting as trustees would have disclosed. The procedure prescribed by the Legislature for the sale of school lands is similar to that prescribed by statute for sales by guardians.

At the time Lamascus sold the oil and gas lease assigned to Phillips he held only an equitable title to the land and had only such interest when the lease was assigned to Phillips.

In Bogerts Trust and Trustees, Vol. 3, Part 1, Sec. 565, it is said:

"A third person who deals with the trustees is put on inquiry as to the extent of the trustees' powers * * *."

In Tootle v. Payne, 82 Okl. 178, 199 P. 201, 202, it is said in the second syllabus:

"* * * The doctrine of bona fide purchaser applies only in favor of a purchaser who has legal title, and does not apply in favor of a bare equity. * * *"

The record shows that when Phillips took an assignment of the oil and gas lease it made no inquiry as to whether the transfer to Lamascus or that by him to Phillips had been approved by the Commissioners. The Certificate of Purchase of record in Garvin County expressly provides that such approval is necessary to all transfers, except such as may be effected by inheritance or devise. This Certificate of Purchase was of record in Garvin County and Phillips' assignor testified that she relied on the Certificate of Purchase and made no inquiry of the Commissioners as to whether the lease or transfer had been approved by them. Inquiry would have disclosed that no approval was ever given.

It is claimed that the Commissioners are estopped from denying the claim of Phillips. It must be admitted that the offer to sell as expressed by the Notice of Sale included no interest in the minerals and that the erroneous Certificate of Purchase and Patent were the result of error and their issuance beyond the authority of the Commissioners who were bound by the rules and regulations prescribed by the Legislature.

The doctrine of estoppel is applicable to the Commissioners where they act within their authority, but where they act beyond the authority granted them their acts were ultra vires and estoppel does not apply. The rule is correctly stated in Murphy v. State, 65 Ariz. 338, 181 P.2d 336, 337, where the Supreme Court of Arizona said:

"[The] principle of estoppel does not apply to unauthorized or ultra vires acts of state officials regardless of capacity in which state acts, whether proprietary or governmental."

1200

In Strand v. State, 16 Wash.2d 107, 132 P.2d 1011, 1017, it is said:

"It is true, of course, that regardless of the capacity in which the state acts, whether proprietary or governmental, the principle of estoppel will not apply to unauthorized or ultra vires acts of state officials."

We think the judgment of the trial court is erroneous principally because it gave effect to a clerical error on the part of the Commissioners and approved acts clearly beyond the authority vested in them by the Legislature. There is no law giving the Commissioners the authority to give away any interest, however trivial, in school lands entrusted to their care and custody as trustee and to be managed by them under rules and regulations prescribed by the Legislature.

The judgment is reversed with directions to enter judgment for the Commissioners quieting their title to all minerals underlying the land and canceling the oil and gas lease assigned to Phillips as a cloud upon the title of the State to all of the minerals.

JOHNSON, V. C. J., and WELCH, DAVISON and BLACKBIRD, JJ., concur.

CORN, ARNOLD and O'NEAL, JJ., dissent.