### JACKSON v. CARROLL.

No. 10360—Opinion Filed Feb. 21, 1922.

Rehearing Denied June 13, 1922.

(Syllabus.)

**1. Guardian and Ward—Sale of Allotments for Lump Sum—Invalidity.**

A joint guardian over three minors, each minor being a Chickasaw freedman and each owning an allotment, makes application to a county court for an order to sell the three allotments, and in said petition does not set out the tract of each particular ward nor the lands of each, an order to sell which is asked, but lumps the three allotments together and asks for an order to sell them as the lands of the three minors. The court makes an order directing the sale in the same manner, not designating the separate tract of the minors, and the notice of sale does not advertise the lands separately as the lands of each ward; the return of sale shows that the lands were sold for a lump sum, without designating the separate tracts of each minor and the amount each brought. In fact, they were not sold separately. The order confirming said sale upon said return confirmed said sale as one tract for a lump sum, and the deed by the guardian to the purchaser was made in the same manner. Held, that such proceeding is an absolute nullity and conveys no title of the wards in and to said lands.

**2. Same—Record as Notice of Invalidity.**

A record showing the manner of conducting said sale, as set forth in the first paragraph of the syllabus, herein, is what is called "void upon its face," and binds no one, and all who deal in said lands under said purported sale take with notice of all that said record shows.

**3. Appeal and Error—Review—Disposition of Cause Upon Reversal.**

Where it appears that the court committed prejudicial error in directing and rendering the judgment rendered, and only questions of unmixed law are involved, and the record of the court discloses what judgment should have been rendered, this court will not reverse and remand said cause for another trial, but will reverse and remand said cause with instructions to the trial court to render the judgment which it properly should have rendered. (First Nat. Bank of Soper v. Beecher, 62 Okla. 36, 161 Pac. 327.)

On Petition for Rehearing.

**4. Judgment — Collateral Attack — Lack of Jurisdiction.**

Where the record in a case affirmatively discloses the facts to be such that the court rendering judgment is without power in such case to make the order or decree it assumes to make, the same is void, and therefore, subject to collateral attack for want of jurisdiction to the extent, at least, that such court is without power to make the same.

**5. Vendor and Purchaser — Notice — Purchasers at Judicial Sales.**

A purchaser of land must look to the title papers under which he purchases, and is chargeable with notice of the facts appearing upon their face; also a knowledge of all the facts suggested therein, and which he might, with the exercise of reasonable prudence and diligence, have ascertained; and hence, a purchaser at a judicial sale not only takes with notice of what is shown upon the face of the proceeding and in the manner and scope as defined herein, but in addition thereto of all facts shown by any record of which in law the purchaser is required to take notice.

**6. Judicial Sales—Notice of Defective Title —Innocent Purchasers.**

If the record of a judicial sale shows a legal title upon its face, together with all other records of which the law requires a purchaser to take notice, and the purchaser

· has no actual notice of any fact that impeaches and destroys the validity of the record title (we mean by 'actual notice' such actual notice as defined in the quotation in this opinion from the case of Creek Land & Improvement Co. v. Davis, herein cited and quoted), and in addition thereto the purchaser has paid a consideration for his title, then the purchaser has a right to stand upon his title notwithstanding the title may in fact and in truth be fraudulent, void, or a nullity as between the parties and all persons with notice, actual or constructive. The law does not give this to the purchaser because he holds a legal title, but because he had a right to rely upon a record showing a legal title, and upon the strength of that record he parted with a consideration, and this gives him, in addition to a clear legal paper title, an equity, which public policy holds to be superior to any equity which may exist in favor of the seller. (German Savings, etc., Society v. De Saschmut, 57 Fed. 399.)

**7. Same—Void Sale.**

A sale proceeding which involves a breach of a substantial right of the owner, as distinguished from a breach of a pure remedy or a right of procedure, is void as against all who take with notice either actual or constructive.

**8. Courts—Rules of Property—Requisites— Right to Invoke.**

No such finality attaches to the decisions of the inferior or intermediate courts that they can be considered as establishing a rule of property, however uniform their course of decisions or however long continued. No question of law is finally settled until it has been determined by the court of last resort. It is of the essence of the theory of rules of property that the members of the community have (or may be supposed to have) taken titles, invested money, and regulated their business dealing in reliance on a judicial decision or decisions which they had a right to regard as a final and authoritative statement of the law which should govern them. If such action has been taken by interested parties on the faith of a decision of a lower court merely, this should not in any way bind or preclude the highest court, when the question is presented to it, from announcing a contrary rule, if that is deemed more correct.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by Riley Jackson against J. S. Carroll and others, to quiet title, etc. Judgment for defendant named, and plaintiff brings error. Reversed and remanded, with directions.

Sigler & Jackson, for plaintiff in error.

Charles A. Coakley and Thomas Norman, for defendant in error.

ELTING, J. This suit was commenced in the district court of Carter county, Okla., by Riley Jackson against J. S. Carroll and others, setting up that he was the owner and entitled to immediate possession of the southwest quarter of the northwest quarter of section 29, township 3 south, range 1 west.

There are three counts in his petition: First, an action for ejectment. Second, in the nature of an action to quiet title. Third, for recovery of rents for the wrongful dispossession of said lands for a period of six years at $100 per year. In his petition, Riley Jackson alleges, in substance, that he is a Chickasaw freedman, and that said lands were his distributive share as an allottee of the Chickasaw Nation, and sets forth a copy of his patent to said lands.

J. S. Carroll, defendant, filed answer, denying the allegations of the plaintiff's petition, and sets up by way of affirmative defense that he, J. S. Carroll, is the owner in fee simple title of the lands sued for by plaintiff, and claims said title by reason of a guardian's deed dated July 8, 1912, from Ben Wright, the duly appointed, qualified, and acting guardian of Riley Jackson, Lidia O. Jackson, and Andrew Butler. Then alleges the due recordation of the said deed, and that he had collected the rents and profits, paid the taxes, and made valuable improvements thereon by greater buildings, cultivation, and otherwise reclaiming said land to the amount of $2,000. Asking that title be quieted in him, and for all necessary relief, and attached as an exhibit to his answer a copy of the guardian's deed.

To this answer Riley Jackson filed a reply, denying each and every allegation of defendant's answer in so far as the same does not admit the allegations of his petition; denying that Ben Wright was ever the guardian of the plaintiff, denying that the court had authorized Ben Wright to sell the land mentioned in plaintiff's petition, and denying that any of the matters were ever authorized by a court having jurisdiction of said matter.

Plaintiff alleged, further, that he was informed and believed that a purported order appointing Ben Wright as a guardian was made in the county court of Carter county, and that said order was void and of no effect. That at the time of said purported appointment the plaintiff was in the penitentiary at McAlester, Okla. That he never signed a waiver and never nominated Ben Wright as a guardian, and no notice was ever served upon him of said proceeding, and that

the same was without his knowledge or consent, and that Carroll had entered into a conspiracy with Ben Wright, the purported guardian, to cheat and defraud this plaintiff out of his property, and that Carroll had Wright appointed with a view of purchasing said lands at fraudulent sale. That he never paid the guardian the consideration for said lands except through a fraudulent devise and a purchase by the guardian of worthless property from the defendant Carroll. That Carroll had signed the bonds necessary for Wright to make, and Carroll had Wright, immediately upon his appointment, to institute proceedings with a view to carrying out said fraudulent sale. Alleging, furthermore, that the plaintiff, at the time of the purported appointment of Ben Wright as his guardian, was more than 15 years of age, and that he was entitled to notice of said proceeding and entitled to nominate his own guardian. In substance, alleging that said sale was void, first, for fraud perpetrated by the purchaser in securing the appointment and the sale; and, second, because the appointment of the guardian was void by reason of failure to give the notice as required by law to the plaintiff.

A jury was waived and the cause proceeded to trial before the court. The court, after hearing the evidence, rendered a judgment in favor of the defendant J. S. Carroll, quieting title in him and removing cloud from title and enjoining Riley Jackson from claiming or asserting any right, title, or interest in said estate. Motion for a new trial was filed, and the same overruled by the court, and appeal lodged in this court by Riley Jackson, plaintiff below, plaintiff in error herein.

There is attached to the evidence in the case-made a copy of the petition of the appointment of the guardian; the waiver of the mother of the plaintiff; a written nomination by Andrew Butler of Ben Wright to be his guardian; order appointing Ben Wright as the joint guardian of Riley Jackson, Lidia O. Jackson, and Andrew Butler; oath of guardian; guardian's bond, signed by Ben Wright, Clyde Johnson, and J. S. Carroll; letters of guardianship; petition to sell real estate; order for hearing petition to sell real estate; an appraisal of the lands of the three minors; the bid of J. S. Carroll in writing; return of sale; order confirming sale; guardian's deed by Ben Wright to J. S. Carroll; an order of the county judge directing guardian to buy a team for $225 and credit the same on the

purchase of the land, and an order directing Ben Wright to loan J. S. Carroll $200 on a first real estate mortgage.

An examination of the record in this case leads this court to conclude that this sale is void absolutely upon the face of the proceeding, and for reasons other than the fraud alleged and contended for by plaintiff in error and other than upon the grounds of the voidness of the proceedings by reason of failure to give the plaintiff in error notice of the proceeding for the appointment of a guardian; these last two being the questions specifically raised by the plaintiff in error in his motion for new trial, and the overruling of which contentions by the trial court is assigned as error in this court. It is true that the grounds upon which we reverse this case and direct judgment for the plaintiff in error were not raised by the plaintiff in error in this court, but we hold that this court has authority to review this record and either direct or render judgment such as the record discloses that the trial court should have rendered in the first instance.

In the case of First Nat. Bank of Soper v. Beecher, 62 Okla. 36, 161 Pac. 327, the syllabus, par. 3, reads as follows:

"Where it appears that the court committed prejudicial error in directing and rendering the judgment rendered, and only questions of unmixed law are involved, and the record of the court discloses what judgment should have been rendered, this court will not reverse and remand said cause for another trial, but will reverse and remand said cause with instructions to the trial court to render judgment which it properly should have rendered."

To the same effect is Andrew v. Thayer, 69 Oklahoma, 171 Pac. 1117, and numerous other decisions by this court.

We will now proceed to set forth our reasons why this record discloses that the sale is void upon its face and that the guardian's deed is an absolute nullity.

The petition for the appointment of a guardian, signed by Ben Wright, asks that he be appointed the guardian of Riley Jackson, Lidia O. Jackson, and Andrew Butler, minors, in Carter county, Okla., and that they are of the ages of 17, 12, and 15 years, respectively. The petition for appointment further alleges that, as Chickasaw freedmen, the said minors had lands allotted to them as follows: To Riley Jackson, the lands heretofore described in the statement of the case, and being the lands in controversy in this case; and to Andrew Butler,

the southwest quarter of the southwest quarter of section 20; and to Lidia O. Jackson, the northwest quarter of the northwest quarter of section 29, township 3 south, range 1 west.

After Ben Wright was appointed guardian of these three minors, and on, to wit, March 25, 1912, he filed a petition to sell the real estate of the three minors. Said petition, after alleging that the personal property of said wards consisted of nothing, alleged the following:

"That the said wards owned the following real estate of the approximate value of $1,200, to wit:"

Then it described the three allotments heretofore designated. The order of sale does not appear to be in the record. The return of sale shows, however, the following recital:

"Comes now Ben Wright, guardian of the estate of said above named minors and shows to the court that pursuant to the decree of the court entered herein, on the 24th day of April, 1912, authorizing him as such guardian to sell all of the real estate belonging to said above named minors hereinafter described, he caused public notice to be given as provided by law and said order by publication in the Ardmore Statesman for four consecutive weeks and by posting three notices thereof, that he would on the 25th day of June, 1912, at the hour of 2 p. m. sell to the highest bidder subject to confirmation by said court said described lands; that on the 25th day of June, 1912, he sold said real estate, to wit: S. W. ¼ of S. W. ¼ of sec. 20, and S. W. ¼ of N. W. ¼ of sec. 29, and N. W. ¼ of N. W. ¼ of sec. 29, all in township 3 south and range 1 west to J. S. Carroll, for the sum of $1,200 on the following terms, to wit: Cash on delivery of deed; that said J. S. Carroll was the highest bidder therefor, and said sum of $1,200 the highest and best sum bid, and that said sum of $1,200 is not disproportionate to the value of said property.

"Wherefore, said Ben Wright prays the court to enter its order setting said return for hearing, and that upon said hearing being had he be directed to execute a proper conveyance thereof to said purchaser.

"Dated this 25th day of June, 1912.

"Ben Wright."

It appears from this return of sale that the three allotments, as directed by the order of the court, were sold to J. S. Carroll in one tract for the lump sum of $1,200. On the 8th day of June, 1912, the county judge confirmed said sale of said three allotments for the sum of $1,200 to J. S. Carroll, and

directed deed by guardian to J. S. Carroll to said lands, and on the 8th day of July, 1912, the guardian made a deed of said allotments in one tract for a lump sum of $1,200 to J. S. Carroll. The notice of sale in this sale proceeding is not in the record but we have a right to conclude from the recitals in the return of sale that the advertisements and notice of sale were of the sale of the land in one tract, and not as separate tracts. We hold that each tract should have been sold separately, and if not advertised in separate advertisements, they should have been separated in the same advertisement or notice of sale.

The provisions of the statute as to the kind of notice of sale that is required, whether at public or private sale, require that the lands and tenements to be sold must be described with common certainty in the notice. This, of course, has reference to the lands belonging to each particular ward. A portion of the first paragraph of the syllabus of the case of Perkins et al. v. Middleton et al., 66 Okla. 1, 166 Pac. 1104, reads as follows:

"The authority of a guardian to sell and convey the real estate of his ward rests entirely upon the statutes. Such real estate cannot be sold or conveyed by the guardian except for the purpose and upon the terms and conditions prescribed by the statute."

This is, to say the least of it, a very unusual proceeding, and one that has probably been but rarely resorted to, and hence the occasions for courts to pass upon the legality of the same have been very rare. After considerable search, we have been unable to find any case where any court has directly passed upon this question; but as a proceeding it is so out of consonance with any elementary sense of right and proper legal principles and procedure that we think citation of authority is unnecessary.

These tracts of land were the individual property of each of these minors. Neither minor had any interest in the tract that belonged to the other minor. Their interest not being joint or common, it is absurd to contend that a court or its agent had authority to hotch-potch these three allotments in one sale and sell them as one tract and for a lump sum without separating and designating the interests of each ward and the particular tract that was his individual property and advertising each particular tract upon its particular merits and disposing of each upon its special intrinsic value. They were sold as a joint interest, when in fact and in truth their interests were sever-

al, and a guardianship court or its agent, the guardian, has no authority under our statutes for such procedure, and such a sale is an -absolute disregard of fundamental rights of the respective wards and their several special interests, and this sale must be held void.

It is true that the appraisement filed in this record shows that each separate tract was appraised at $350, and that the lump sum received for the three combined tracts sold was $150 in excess of their combined appraisement. We conclude from this record that this was a sale at private sale, under the order of the court, and which requires an appraisement. But the object of the appraisement is to fix a standard below which the lands cannot be legally sold; the statute fixing the per cent. of the appraisement which the land must bring before it can be a legal sale. There is no way to tell what any particular tract brought, nor what value the purchaser placed upon each particular tract. What each particular tract possessed of intrinsic merit and which would appeal to a purchaser, each ward was entitled to, and each ward was entitled to have his property sold separately and upon the particular merits of his tract of land, and to no more and no less. To divide the proceeds of this sale equally between the three minors is not to say that he has a just distribution of what his property would bring under a free, fair, and independent sale of its particular interests.

To repeat, this is such an anomalous and unusual procedure that decisions upon the proposition seem to be very rare.

The 8th paragraph of 21 Cyc. 37, reads as follows:

"Subject to the qualifications just noticed that no conflict of property interest shall exist between the guardian and his ward, a guardian may be appointed for more than one ward. Thus, where several wards hold by a common title, one guardian may be appointed to act for all."

And under said paragraph the case of Pursley v. Hayes, 22 Iowa, 11, 92 Am. Dec. 350, is cited. We take the following from the body of the last cited case, from pages 365, 366, of 92 Am. Dec:

"Next is the objection that the guardian was appointed for the wards jointly, and the bonds are for their security in the same manner. The record discloses that these lands constituted the entire property of these minors. Each ward did not have property in his own right distinct from the others. They all held by a common title

as tenants in common. And certainly nothing has been more common in our practice than to appoint one guardian for all minors thus interested, and no rule of the statute can be found forbidding it. True, the guardian ought to keep his account with each ward separate and distinct. And this is all that is held in this respect in the case of Foteaux v. Lepage, 6 Iowa, 123, to which counsel so frequently refer. But a failure on the part of the guardian to comply with his duty in this respect would not invalidate a title held under a sale made by him. And we may be allowed to add that, where property is held as in this instance, economy and a sound discretion would dictate that the trust should be imposed upon one instead of upon several persons. We fail to see any legal or reasonable obpjection to such a practice."

In the cited and quoted case they sustain the joint appointment and the sale on the ground that the wards had a joint interest in the property. But by strong inference this case holds that if the wards had held by a several ownership, the court would not have so held.

We have examined, also, the case of Foteaux v. Lepage, 6 Iowa, 123, and cited in the quotation given. This last cited case seems to have involved a question where the guardian had merged the accounts of his wards for whom he was joint guardian, holding that the accounts should have been separated, and holding a joint judgment void.

It is possible that the interests in lands of two or more minors might be properly and legally sold and carried through in one proceeding, but that would, in effect, if properly conducted, be three separate and distinct proceedings carried on at one and the same time, and might be quite difficult and hazardous to undertake. But such a proceeding as is disclosed by the record in the instant case we are compelled to hold to be a nullity, and the same is shown upon the face of the proceeding.

The following is taken from Pettis v. Johnston, 78 Okla. 285, 190 Pac. 689:

"A judgment void on its face may be vacated upon motion, no matter what length of time has interposed since its rendition; neither is it necessary for the movant to show meritorious defense, nor can the court impose any conditions for vacating it. See long list of cases in annotation to Furman v. Furman (N. Y.) 60 Am. St. Rep. 642-643; Blyth & Fargo Co, v. Swenson, 15 Utah, 345, 49 Pac. 1027; Harris v. Hardeman, 14 How. 337, 14 L. Ed. 444; Condit v. Condit, 66 Okla. 215, 168 Pac. 456."

The tenth paragraph of the syllabus in Pettis v. Johnston, supra, reads as follows:

"A judgment which is void upon its face, and requires only an inspection of the judgment roll to demonstrate its want of validity, is a 'dead limb upon the judicial tree, which may be lopped off at any time'; it can bear no fruit to the plaintiff, but is a constant menace · to the defendant, and may be vacated by the court rendering it 'at any time on motion of a party or any person affected thereby', either before or after the expiration of three years from the rendition of such void judgment. Such motion is unhampered by a limitation of time."

A guardianship proceeding for the sale of a ward's real estate, void upon its face, or, in other words, the record of the proceeding shows that it was in contravention of the essential terms, conditions, and purposes of the statutes, and so out of consonance with the policy and safeguards of the general law intended for the protection of the fundamental rights of such wards of probate courts, that it binds no one, and all who deal in such lands purported to be sold under such proceeding do so at their peril and at the risk of having the title declared void upon its face.

This cause is, therefore, reversed, with directions to enter judgment for the lands sued for in favor of the plaintiff in error, Riley Jackson, and decree declaring the guardian's deed void and of no force and effect and canceling the same and declaring the title to be in the plaintiff in error, Riley Jackson, and enjoining the defendant in error, and any one claiming by or through him, from claiming any right, title, or interest in and to said lands, and that the court proceed to determine the amount of rents and profits due the plaintiff in error, Riley Jackson, as against the defendant, J. S. Carroll, for the wrongful dispossession of said lands.

HARRISON, C. J., and JOHNSON, McNEILL, KENNAMER, and NICHOLSON, JJ., concur.

On Petition for Rehearing.

Sigler & Jackson, for plaintiff in error.

Charles A. Coakley and Thomas Norman, for the defendants in error.

Joseph C. Stone, Charles A. Moon, Francis Stewart, Kenneth H. Lott, J. R. Cottingham, S. W. Hayes, George M. Green, E. E. McInnis, J. H. Everest, Ed. S. Vaught, Phil D. Brewer, Thos. H. Wren, and A. G. Cochran, amici curiae.

ELTING, J. It is the contention of those favoring the petition for rehearing in this cause that, since the court had jurisdiction of the minor and of the subject-matter, any defects that afterwards arose in the proceeding were mere irregularities and were cured by an order of confirmation. They offer but one authority in support of the contention that this defect is a mere irregularity, and that is at the close of their brief, and this authority we hereinafter discuss.

The whole burden of the argument in the brief of the supporters of the petition for rehearing is devoted to an effort to show that the purchaser could not have had notice of these defects under the state of the record, and certainly if the defects complained of were mere irregularities (and we suppose they mean by irregularities such as defined in Eaves v. Mullens, hereinafter cited), then the fact that the purchaser had notice of these defects could not in any way affect his title, for the rule is that the owner can take advantage of irregularities as against a purchaser only by appeal of the proceedings, and in a proceeding such as the one in the instant case, as against irregularities, it would make no difference whether the purchaser had notice or not, and we come to the conclusion that the supporters of the petition for rehearing in this case regard the defect in this proceeding something more than a mere irregularity, otherwise they would not be putting up such a strenuous contention on the question of notice as they are doing in this case.

There are two propositions that the amici curiae repeat in tiresome regularity, and one is that the county court of Carter county having jurisdiction of the guardian and of the subject-matter, any proceeding by the court thereafter could not be void; and the other is that the defect, if any, was a mere irregularity.

We would infer that the proposition for which the supporters of the petition for rehearing contend is that if the county court had jurisdiction of the ward and the subject-matter, then any act performed by the court thereafter would be a mere irregularity and not subject to a collateral attack. The following, however, is the true rule as found in vol. 7, Ency. U. S. Sup. Court Reports, 626:

"Qualification of Rule—It has been expressly held in several well-considered cases that the doctrine just set forth that when a court has once acquired jurisdiction it has a right to decide every question which arises in the case, and its judgment, however er-

roneous, cannot be collaterally assailed, is only correct when the court proceeds, after acquiring jurisdiction of the cause, according to established modes governing the class to which the case belongs, and does not transcend in the extent or character of its judgment the law which is applicable to it. Although a court may have jurisdiction over the parties and the subject-matter, yet if it makes a judgment or decree which is not within the powers granted to it by law of its organization, its judgment or decree is void."

And following this is found. this note: "Qualification of Rule—Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914."

See Windsor v. McVeigh, supra, for the following:

"Though the court may possess jurisdiction of a cause, and of the subject-matter and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law."

In the case of Roth v. Union National Bank, 58 Okla. 604, 160 Pac. 505, the court said:

"Where the record in a case affirmatively discloses the facts to be such that such court is without power in such case to make the order or decree it assumes to make, the same is void, and therefore subject to collateral attack for want of jurisdiction to the extent, at least, that such court is without power to make the same."

The same proposition is laid down in 5 R. C. L. 853.

Our conclusion is that the act of the county court and the guardian in selling these three separate individual allotments in the manner in which they were sold was such a proceeding as could only be had in a sale of a joint interest, and where the interest of the three minors attached to every part and parcel of the tract. We hold the sale to be void for the reason hat it was against public policy and the statute, and we do not care whether you designate the act void because in excess of statutory or constitutional jurisdiction of the county court or in excess of the inherent power of the county court. In either event, it is beyond the power of the court to direct or the guardian to perform without direction and the court to confirm such an act.

This holding was stated in substance in the original opinion, and there is nothing in the petition for rehearing or the brief in support thereof that has caused this court to change its attitude taken in the original opinion, and to repeat, will state that the main argument and citation of authority in the brief and petition for rehearing is directed to show that the state of the record was not sufficient to bring notice home to the purchaser, the defendant in error, J. S. Carroll.

This court has passed upon various phases of fraud in the procurement of orders of confirmation and guardianship proceedings, stating when open to attack and when not; when void and when voidable; when irregularities and when nullities; when the purchaser takes with and when without notice, and when the purchaser becomes an innocent purchaser for value without notice, and under what circumstances of the record a purchaser is an innocent purchaser without notice and for value; and some of said opinions being as follows. Roth v. Union National Bank, 58 Okla. 604, 160 Pac. 505; Burton v. Compton, 50 Okla. 365, 150 Pac. 1080; Landley v. Ford, 68 Oklahoma, 171 Pac. 471; Adams Oil & Gas Co. v. Hudson, 55 Okla. 386, 155 Pac. 220; Winters v. Okla. Portland Cement Co., 65 Okla. 132, 164 Pac. 965; Thomas v. Huddleston et al., 65 Okla. 177, 164 Pac. 106; Perkins v. Middleton, 66 Okla. .1, 166 Pac. 1104; Griffin v. Culp, 68 Okla. —, 174 Pac. 495; Allison v. Crummey, 64 Okla. 20, 166 Pac. 691; Eaves v. Mullen, 25 Okla. 679, 107 Pac. 433; McCoy et al. v. Mayo, 73 Oklahoma, 174 Pac. 491; Gaines v. Montgomery, 82 Okla. 275, 200 Pac. 219; Levi Carlile v. Nat. O. & Dev. Company, 83 Okla. 217, 201 Pac. 377; Tootle v. Payne, 82 Okla. 178, 199 Pac. 201.

We think that a study of the legal propositions and the facts involved in the above listed cases will make it reasonably clear as to when and when not and in what manner orders, judgments, and proceedings can be collaterally attacked and when they can and when they cannot be set aside. We are not going to take the time and space to analyze the various /phases and legal propositions in the above list of cases. We may, however, analyze one or two of the propositions involved which are particularly applicable to the instant case before we are through.

From the reading of these cases we find if would be difficult to deduce a general principle that would be a test of when a proceeding is void and when only voidable, since such a variety of facts and circumstances arise in these proceedings. It is almost impossible to find a general principle applying to all of them, and hence each case, like the tub, must stand upon its own bottom.

Attorneys, and even the courts, are in many instances inaccurate in the use of lan-

guage; or probably the best way to state it is to say that in their use of language they are often misleading, and this arises from the fact that they often fail to state the scope that is intended to be given the language used. To illustrate, we say that a certain proceeding is void and a nullity and beyond the power or jurisdiction of the forum in which it was made, and if such voidness appears upon the face of the proceedings, that the purchaser and his assigns and successors take no title. This is a true statement so far as it goes, but is misleading for the reason that it does not go far enough. A purchaser is not only bound by what is shown upon the face of the court proceeding, or judgment roll, but the purchaser, and even the court, is also bound to take notice not only of the court record, but all other records that affect the title and rights of the parties involved in the proceedings, and which, in law, are held to be notice.

The following are the first and third paragraphs of the syllabus of the case of Creek Land & Improvement Co. v. Davis, 28 Okla. 579, 115 Pac. 468:

"(1) A purchaser of lands takes them with constructive notice of whatever appears in the conveyances which constitute his chain of title; and, if sufficient appears therein to put a prudent man on inquiry, which would, if prosecuted with ordinary diligence lead to actual notice of a right or title in conflict with that he is about to purchase, and he fails to make such inquiry, the law will charge him with the actual notice he would have received if he had made it."

"(3) 'Actual notice' does not always mean what in metaphysical strictness it imports, but more often means knowledge of facts sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts."

The following is the second paragraph of the syllabus of the case of Knowles v. Williams et al. (Kan.) 48 Pac. 856:

"A purchaser of land must look to the title papers under which he purchases, and he is chargeable with notice of the facts appearing upon their face; also with knowledge of all facts suggested therein, and which he might, with the exercise of reasonable prudence and diligence, have ascertained."

For instance, in the case of Thomas v. Huddleston, heretofore cited, in which Bleakmore, Commissioner, discusses what is embraced in the records that purchasers are presumed to take knowledge of, it was held that the purchaser would be held to take notice of the enrollment record of the Commissioner to the Five Civilized Tribes which showed conclusively that the ward was of age at the time the order to sell his lands was made, and that hence the probate court was without jurisdiction to make the order, since not having jurisdiction of a ward shown by a conclusive record to be of age and hence no longer laboring under the disability of minority.

Of course, if the question of age had been a matter resting entirely in the realm of proof and there was no record showing that he had arrived at age, then the presumption of non-age would have arisen to support the validity of the judgment. But this could not be true in the face of a conclusive record showing him to be of age at the time the order was made. Hence, the statement "That what is shown upon the face of a record is all that binds the purchaser," is misleading. The true statement is that the purchaser is bound by any record which in law he is bound to take notice of whether in the proceedings or not.

To bind this purchaser it must be a fact that the interest of these minors was in fact and in truth an individual and severable interest at the time of the sale; or that that of Riley Jackson was such an interest. It must further appear to be a fact that the court sold it as a joint interest or in such manner as the joint interests of two or more wards would be sold.

It must be shown further that the record in this case is such that constructive notice of these facts is given the purchaser.

The record that we are dealing with in the instant case does show, and it is unrefuted by the answer, since not denied, but in fact is admitted, that Riley Jackson's interest in the land was a certain 40 acres, allotted to him as a Chickasaw freedman and this interest is set out in his petition in this suit and a copy of his patent is attached to the petition, and the defendant in the suit does not deny that it was Riley Jackson's individual allotment that constituted a portion of the lands bought in the proceeding, but sets up a claim to the same through the guardianship proceeding involved herein and which proceeding is set out in the record in this case.

The lands so allotted to Riley Jackson as his individual land will continue to be his property until it is shown to have passed to some one else. The record shows that the only transfer of whatever interest Riley Jackson had was the transfer in the proceeding that we, in this case, have held void for the reason that it was sold in a joint conveyance with the lands of the other two

minors. So it does not matter whether this record shows whether the other two minors held their interest jointly or severally, but it is sufficient if it is shown by this record that Riley Jackson's interest was an individual interest, and is furthermore shown, as we hold, that this minor's individual allotment was hotch-potched and sold with the interest of the other two minors.

A copy of the patent appears in this record, showing the lands in controversy, the 40-acre tract to have been patented to Riley Jackson, a freedman, as his individual allotment. The dates of the approval of said patent was 1906, while the petition for sale in the instant proceeding was filed March 25, 1912, so the patent and record thereof of which the purchaser, J. S. Carroll, was bound to take notice, were in existence a long time prior to the commencement of the proceedings under which he seeks to procure title, showing that the lands in controversy were the allotment of Riley Jackson. This brings notice home to J. S. Carroll, the purchaser, of the individual interest of Riley Jackson in this tract of land at the time Carroll purchased the same.

The very documents, the patents, showing the allotment of this land in severalty of these minors would be among the first instruments appearing in an abstract of title, and are the sole basis of title, and it would be absurd to contend that the defendant in error, J. S. Carroll, was not required to take notice of what they show.

The only question left for consideration now is whether the record in this court shows a joint instead of a severable sale of this interest. Of this there can be no question, but since we have taken up an exposition of this matter, we will analyze and show conclusively how this arises.

The supporters of the petition for rehearing, in their brief, state that this court has ignored the proper rule of presumptions in considering this case. The rule of presumption as they state it, and with which we agree, is that, in the absence of any showing in the record, either one way or the other, a presumption arises in favor of the existence of all those matters necessary to give the county court jurisdiction and in favor of the validity of the sale.

The writer of said brief states that this court reversed this rule of presumption and presumed the existence of such facts as would make the record void, and the writer of said brief seems to base his conclusion upon the following situation, to wit: There

is absent from the record a copy of the order of sale and of the notice of sale. This absence of these portions of the record was stated in the original opinion, and they being absent, the writer of the brief states that this court presumed that the county court ordered a joint or hotch-potch sale and that the notice of sale advertised a joint sale, and not a sale of the several interests. We differ with the writer of the brief, and state that the opinion does not presume any such facts, but the opinion gives the substance of the return of sale, which recites that the order directed them to sell it as one tract, and that they were advertised as one tract, and that it was sold as one tract for the lump sum of $1,200; and we desire to assert now, and with emphasis, that it does not make any difference whether the order of sale directed this land to be sold as the several interests of the minors or not, or whether it directed it to be sold as a joint interest and as one tract. Neither does it make any difference whether the guardian advertised it in the notice of sale to sell as the individual allotments of the minors or whether he advertised it to sell in one tract, without designating the individual interests of each minor, since the return of sale shows that it was sold as a joint interest and as one tract and for a lump sum, that it was deeded in the same manner and confirmed in the same manner, and hence as a sale it is void, as shown upon the face of the record. We care not whether the order was joint or not, or whether the notice was in accordance with the law, and advertised lands of each individual separately; the sale was not a legal sale, and was such a sale as a court could not legalize by an order of confirmation. All this appears upon the face of the return, upon the face of the deed, and upon the face of the order of confirmation, and it shows that the interests of these minors was merged and hotch-potched and no one could determine as to what the interests of each minor was.

The case of McCoy v. Mayo, heretofore cited, was a case in which a minor's lands were sold for part cash and part property, exchanged therefor, and this appearing upon the face of the deed, the deed was held absolutely void and the purchaser took no interest. We quote the following from page 494 of 174 Pac:

"It follows that, even if the procedure required by law had been followed for the sale of the minor's interest in the land in question, it appearing upon the face of the deeds, which are the basis of plaintiff's recovery, that the consideration of the sale was for

part cash and part property, such deeds were absolutely void. The deeds set up by the plaintiff being absolutely void upon their face, the answer of James Daugherty stated a defense to the action, and the court committed reversible error in sustaining plaintiff's demurrer to the answer of James Daugherty."

We will state the case of Perkins v Middleton, heretofore cited, 'was the same kind of a case as the case of McCoy v. Mayo, and was a sale of a minor's interest without cash and for exchange of property, but in the last cited case it did not appear anywhere upon the face of the record or upon the deed that it was for an exchange of property, but appeared regular and for cash, and it was held that a subsequent purchaser without notice and for value took good title; but that the minor had a ·cause of action against the purchaser to recover the difference between the value of the lands sold and the property exchanged therefor.

We are inclined to avoid the giving of unnecessary definitions, but we are going to assume such a burden in this case and undertake to lay down a definition of the rights and powers of purchasers in guardianship and judicial sales as follows:

If the record of a sale shows a legal title upon its face, together with all other records of which the law requires· a purchaser to take notice, and the purchaser has no actual notice of any fact that impeaches ·and destroys the validity of the record title (we mean by actual notice such notice as is defined in the quotation in this opinion from the case of Creek Land & Improvement Co. v. Davis, heretofore cited and quoted) and has paid a consideration for his title, then the purchaser has a right to stand upon his title notwithstanding the title may be in fact and in truth fraudulent, void, and a nullity as ·between the parties. The law does not give this to the purchaser because he holds a legal title, but because ' he had a right to rely upon a record showing him a legal title and upon the strength of that record he parted with a consideration. This gives him, in addition to a clear legal paper title an equity which public policy holds to ·be superior to any equity which may exist in favor of the seller. It is the policy of the law to recognize as superior the equity and rights of a purchaser in such a case as against a seller. This is discussed in the cases of Tootle v. Payne and Allison v. Crummey, heretofore cited. The case of German Savings, etc., Society v. De Laschmut, 57 Fed. 399, discusses the principle . above stated. The following is quoted from the last cited case:

"The doctrine of bona fide purchaser is not applied to protect an equity against a legal estate, but to protect the legal title against a prior equity, ·by uniting with such legal title an equity arising from the payment of money and securing the conveyance without notice and a clear conscience."

See, also, in this connection, 8 C. J. 1147-49, under the head of "Bona Fide Purchaser."

Even as defined above, there are exceptions, but we are not going· to undertake to point them out in this opinion, but suffice to say that this rule is applicable in the instant case and states the rule that controls herein, and when applied to the facts and the state of this record, J. S. Carroll, the defendant in error, cannot be held to be an innocent purchaser without notice, but must be held as bound by the face of this record and ·by other records of which the law requires him to have taken notice.

We have heretofore stated that the argument in support of the irregularity theory by those contending for the petition for rehearing in this case was a very short argument at the close of their brief, and they cite and quote from the case of ·Carolina v. Montgomery, 74 Oklahoma, 177 Pac. 612. In this case this court refused to hold a guardianship proceeding open to collateral attack for the reason that the guardian had failed to execute a sales bond. This court held that the failure to make this bond was a mere irregularity, notwithstanding the fact that section 6564, Rev. Laws 1910, directs the makings of this bond before sale. But the court, in this case, interpreted this to be a directory statute, and not mandatory. The brief then infers the existence of an analogy both in fact and principle to exist between the case at bar and the cited case, and hence concludes that this court should hold the defect in the instant case a mere irregularity, and not a substantial defect. Our answer to this argument is that the holding of the court in Carolina v. Montgomery does not help us in determining the rightness or ·wrongness of the opinion in the instant case and gets us nowhere. This court has in some instances. as in the case just cited, held certain statutes providing for procedure in guardianship matters to be merely directory, while it has held other statutes providing for procedure to be mandatory. For instance, in the case of Winters v. Oklahoma Portland Cement Co., heretofore cited, where in a private sale the property of a ward failed to sell for the per cent. of the appraisement. stated to be necessary, it was held that the statute was mandatory and the sale void. In the case of Roth v. Union National Bank, heretofore cited, it was held

that a mortgage given on the property of a minor's estate in excess of the debts for which the estate was legally liable was invalid to the amount of the excess, since in contravention of section 6364, Rev. Laws 1910. In the case of McCoy v. Mayo and that of Perkins v. Middleton, heretofore cited, it was held that the statute requiring the sale of a minor's land to be for cash, or for part cash and balance by deferred payments, was mandatory, and that a sale in exchange for other property was void. Hence, after a review of all these cases, we come to the same conclusion as is stated in vol. 7, Words & Phrases, p. 6743: "The distinction between remedy and substantive right is incapable of exact definition," and just what controls a court in defining a certain statute pertaining to procedure to be directory and another statute to be mandatory, is difficult to determine, and no matter how much courts may undertake to limit and define, that when they undertake to apply such a principle to the particular facts of a particular case, the difficulties still continue.

We take the following from page 14 of the brief in support of the petition to rehear:

"The question as to when a defect in a probate sale proceeding is jurisdictional and when it is a mere irregularity was first passed upon by the Supreme Court of Oklahoma in the case of Eaves v. Mullen, 25 Okla. 679, 107 Pac. 433, which case has been many times cited, approved, and followed. We hope the court will carefully examine this entire case, but we shall quote therefrom only briefly as follows: * * *"

Eaves v. Mullen did not undertake to decide and define when a defect in a probate sale is jurisdictional and when it is a mere irregularity. It did, however, state that there were two lines of legal opinion; one line being for strict construction, and holding all defects, whether substantial or mere irregularities, to be sufficient to avoid sales; the other line being the liberal line, holding that only substantial defects would avoid sales, and then the opinion proceeded to hold that a notice of a hearing of a return of sale in a guardianship proceeding, published for only nine days instead of ten days as the statute required, was a mere irregularity, and not a substantial defect, and did not avoid the sale, and also proceeded to commit this court to the liberal rule. So Eaves v. Mullen is not so much a legal straightedge by which to line up and demark the legal thought pertaining to guardianship sales as some would lead us to believe.

In the case of Carolina v. Montgomery, this court based its ruling that the failure to make a sales bond was a mere irregularity and not a substantial defect upon the fact that the statute directing the making of such bond does not state that if such bond is not given the sale shall be void. In the case, however, in which certain statutes were declared mandatory and that a failure to comply with their provisions in any sale proceeding had the effect of making such sales void, they did not contain such a provision. So the case of Carolina v. Montgomery affords no aid in distinguishing between irregularties and substantial defects and only applies the irregularity theory to a particular statute involved in that particular case and to the particular facts.

In the case of Frazier v. Jenkins (Kan.) 68 Pac. 24, the following is stated.

"Whatever may be the law in other states, in this one it is settled that under the statute last quoted, the order of the court confirming the sale becomes res adjudicata as to irregularties only and cures nothing of substance."

The question involved in this last cited case was the question of the right of the guardian to sell the property of his ward to his own wife. They refused to hold such a proceeding a mere irregularity, and held it to be a matter of substance, and avoided the sale.

In the case of Burton v. Compton, heretofore cited, and involving the same question as the last cited case, this court held that the sale by guardian to his wife of his ward's property was not an irregularity, but a matter of substance, and avoided the sale, both for the reason that such a sale was contrary to the statutes and was condemned by public policy, and this it held without regard to whether such sale was in good faith and for fair consideration. In the instant case, we hold that a sale conducted as was the sale herein is void for the reason that same is contrary to the statutes and is condemned by public policy, and this is so held without regard to whether it was done in good faith and for a fair consideration.

From a study of the various cases, we conclude the test to be this: That where a proceeding is in contravention of those provisions of our probate statutes and of public policy that are intended to safeguard the substantial rights of the wards, such contravention avoids the sale; but if the proceeding fails to comply with some mere remedial right of procedure that has no tangible, direct, or immediate connection with any substantive right, then such failure

should be held to be a mere irregularity, and not a fatal defect.

For instance, we can see a good reason why a court would hold a sale of a ward's property sold at a private sale and at a price less than the per cent. of appraisement as directed by statute. to be a fatal defect. This could be based upon the fact that a private sale as defined under the statutes is a departure from the method of public sales as defined by the statutes, and the policy of the Legislature might be that to protect a minor's interest it was necessary to appraise the property sold and require that it bring a certain per cent. of the appraisement, otherwise, sale void; while a failure to execute a special sales bond as directed by statute would in reason be held to be a mere breach of a remedy or method of procedure and would not be a violation of a substantial and inherent right, and the failure to comply could justly be held to be a mere irregularity and not sufficient to vitiate a sale.

While it may be held more a difference in the degree than in the nature of the protection, since they are both intended as means of safeguarding the rights of the minor, there is a fundamental difference, however, as we view it, since the appraisement requirement is a direct and immediate means of protection, while the bond is a remote and indirect means of the safeguarding the interests of the ward.

This discussion of these distinctions may not be very profitable and may assist us but little on the road to the solution of these difficult and intricate problems, but in closing we desire to state that the application of the principles that we have reviewed in this discussion to the proceeding in the instant case irresistibly presses us to the conclusion that such proceeding is a nullity. The very nature of such a transaction and its possible consequences upon the interests of wards are such that both substantive law and public policy condemn it, and this is so without regard as to whether or not a particular proceeding may have worked injury to the ward.

We will analyze briefly just what was done in this proceeding and in just what manner the rights of the particular wards were involved in this proceeding.

The property interest of each of these three minors was a several interest in absolute fee simple in a particular 40 acres embraced in the 120 acres sought to be sold. The petition for sale states that the wards "own the following described real estate of the approximate value of $1,200.00, to wit," and then describes the 120 acres embracing the three allotments. The wards did not own the 120 acres, but each ward did own a particular 40 acres embraced in the description of the 120, but owned no interest in any acre that was embraced in the other 80 acres described. Then the question can be asked, How can a court be held to have had jurisdiction of and the power to convey certain property in a sale proceeding which subject-matter consisting of a certain property right, which is nowhere described and the actual property interests of each of the minors is nowhere properly defined or limited? The sale, in effect, does not sell the entire interest of the minors in any acres of the land. It only purports to sell one-third of a minor's interest in any acre, when in fact there are two acres in each three acres in which some one minor did not own anything; and there is one acre out of each three acres in which some one of the minors owned the entire acre and the other two owned no part thereof.

We think that there is a strong analogy between the principle involved in the case of Burton v. Compton, heretofore cited, quoted, and discussed, and the instant case. We take the following brief quotations from said case:

"And he says in substance (referring to Lord Thurlow's discussion) that the rule rests upon public policy, and such a purchase will not be permitted in any case, however honest the circumstances, for the general interest of public justice requires it to be destroyed in every instance"

—and that:

"From the general policy, and not from any peculiar imputation of fraud, a trustee shall remain a trustee for all intents and purposes."

Again quoting from Frazier v. Jenkins, heretofore cited, and which is based upon a sale by a guardian to his wife of his ward's property, the case states the following:

"The opportunities which are open to an unfaithful trustee to advantage himself out of the trust estate are so many and so tempting, and the condition of the beneficiary in the trust ordinarily so helpless and confiding, that the law gives warning in advance against all transactions out of which it is possible for the former to make gain at the expense of the latter."

If guardians were permitted to hotchpotch the several interests of minors in the manner that was done in the sale in the

instant case, it would give opportunity for fraud and inequitable handling of the estates of minors that is revolting to every reasonable estimate of what is just and proper law, and the natural inclination of all just minds is to condemn such a proceeding.

We take the following from the petition for rehearing in the instant case:

"Said decision overlooked the further question that the manner of sale in question is not prohibited by statute and has been uniformly approved by the title lawyers of the state since statehood and has become the rule of property."

The first portion of the above proposition we have already answered in this opinion, and as to the last suggestion, we will state that this is the first time it has ever been called to the attention of this court that title lawyers have the power to establish rules of property, or that a rule of property can be established by a holding of an inferior court, and which holding has not been approved by the highest appellate court of the state. We think the proper rule as to what constitutes a rule of property arising from judicial precedent is stated in Black's Law of Judicial Precedent, on page 247, as follows:

"In order that a judicial precedent should be recognized as having settled an inviolable rule of property, it must have proceeded from the court of last resort."

The same authority, on the same page, further says:

"No such finality attaches to the decisions of the inferior or intermediate courts that they can be considered as establishing a rule of property, however uniform their course of decisions or however long continued. No question of law is finally settled until it has been determined by the court of last resort. It is of the essence of the theory of 'rules of property' that the members of the community have (or may be supposed to have) taken titles, invested money, and regulated their business dealings in reliance upon a judicial decision or decisions which they had a right to regard as a final and authoritative statement of the law which should govern them. If such action has been taken by interested parties on the faith of a decision of a lower court merely, this should not in any way bind or preclude the highest court, when the question is presented to it, from announcing a contrary rule, if that is deemed more correct."

The petition for rehearing in this case is, therefore, denied.

All the Justices concur, except HARRISON, C. J., PITCHFORD, V. C. J., and KANE, J., not participating.